PEOPLE *v.* FISHER

1. Larceny—Asportation.

   Actual failure to make away with property does not defeat a charge of larceny since a mere removal of the goods from the place where the accused found them constitutes a carrying away (MCLA § 750.356).

2. Larceny—Asportation by Another.

   An accused, to be guilty of larceny, need not have actually moved the goods himself; the asportation may be accomplished by a confederate or an innocent agent (MCLA § 750.356).

3. Criminal Law—Lesser Included Offenses—Instructions to Jury.

   Error in failing to charge on a legally possible included offense may occur only where the defense theory encompasses a lesser included offense which is supported by some competent testimony.

4. Criminal Law—Sharing Assigned Counsel—Effective Counsel.

   Defendant's sharing assigned counsel with his codefendant, who testified and implicated defendant by name as a participant in the larceny charged, did not deny defendant effective assistance of counsel where the codefendant's testimony gen-

---

References for Points in Headnotes

[1, 2] 50 Am Jur 2d, Larceny §§ 13, 15–19.

What amounts to asportation which will support charge of larceny. 19 ALR 724, s. 144 ALR 1383.

[3] 53 Am Jur, Trial § 798.

[4] 21 Am Jur 2d, Criminal Law §§ 309, 318, 319.

erally corroborated the testimony of the two arresting police officers and where the testimony was inconsistent with the officer's testimony, the inconsistencies inured to defendant's benefit.

Appeal from Midland, James R. Rood, J. Submitted Division 3 March 4, 1971, at Grand Rapids. (Docket No. 9746.) Decided March 26, 1971.

Norman G. Fisher was convicted of larceny. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward G. Durance,* Prosecuting Attorney, and *Robert J. Rhead,* Assistant Prosecuting Attorney, for the people.

*Doyle A. Rowland,* for defendant on appeal.

Before: FITZGERALD, P. J., and HOLBROOK and BRONSON, JJ.

HOLBROOK, J. Defendant Norman G. Fisher and Douglas E. Vanderbush were tried in a joint trial and convicted by a jury in the Circuit Court for Midland County on October 21, 1969, of the crime of larceny of property of the value of more than $100. MCLA § 750.356 (Stat Ann 1971 Cum Supp § 28.588). Both defendant Fisher and his codefendant Vanderbush were represented at the trial by the same counsel. Defendant was sentenced to a prison term of from two to five years.

Defendant Fisher has taken a delayed appeal by leave of this Court dated July 17, 1970.

The people presented evidence which showed that at about 2:30 a.m. on August 23, 1969, two police officers, while cruising on the expressway, observed a pickup truck coming out of the Gerace Construc-

tion Company without its lights on. This area was occupied by small industrial enterprises. To drive to the vicinity where the truck had been seen, it was necessary for the officers to proceed down the expressway to where a cross-over road was located. Upon reaching the location, they proceeded into a driveway of the Phoenix Sprinkler Company and drove to the rear of the building where they saw a pickup truck with two men loading copper tubing onto the truck. Both officers identified the defendant as one of the two men. The officers stopped their car in close proximity to the truck and the two subjects started to flee. One of the officers pursued the two subjects directly, and the other ran around the building in the opposite direction to prevent their possible escape. In a matter of seconds both Fisher and Vanderbush stopped upon being informed that the officer was a police officer and that he would shoot if they didn't stop. Defendant was on the ground and Vanderbush was standing at the time that they were apprehended. Each had a pair of gloves. Defendant's gloves were on the ground next to him, and Vanderbush's gloves were in his pockets. Both were arrested and taken back to the squad car at which time two other officers arrived. One took pictures of the scene, which were admitted into evidence.

Codefendant Vanderbush took the stand and testified that he had been drinking heavily that night and was not thinking straight. He further stated that there were three individuals at the scene, that they intended to steal the copper pipe, that he and Kenny Fisher (no relation to appellant) were actually loading the pipe, and that appellant was the lookout man. A warrant for Kenny Fisher had been issued some time before the trial, but he was not located in spite of a diligent search for him by

various police agencies in the state. Vanderbush contested the number and size of the copper tubing on the truck, stating that there was not more than seven pieces loaded and that nearly all of them were of the one-inch-diameter size. This testimony placed in issue the value of the copper tubing because if he had been correct, and nearly all of the tubing was of the size of one-inch diameter, it would not amount to the value of more than $100. If the value were less than $100, it would be a misdemeanor. Codefendant's sole defense to the action itself was that he was so intoxicated that he did not have the ability to entertain in his mind the necessary intent to steal.

The defendant's mother was a witness for the people and her testimony was to the effect that she had talked with her son at the jail after the occurrence. Her pertinent testimony appears in the record as follows:

"*Q.* And, did you ask Norman something in the course of this conversation with him?

"*A.* Yes, I did.

"*Q.* What did you ask him?

"*A.* I asked him why he did this.

"*Q.* And, what did he say?

"*A.* Well, he said that he didn't know. He said that they had been drinking and that he just didn't know. He said that when he left the house they were just going for a ride.

"*Q.* Who was he with?

"*A.* There was Norman, Doug Vanderbush, and Kenneth Fisher.

"*Q.* And, your son admitted to you that he took these pieces of pipe?

"*A.* He said that he got up to there with the boys; and, he said he was stoned; and he said they got out of the truck; and he said he was scared and shaking; and that Doug and Kenneth told him to

leave if he was scared, just to take a walk; and so, he said he walked up the driveway on the east side of the Phoenix Sprinkler Company and walked out to Savage Road. He said he walked back around the back of the building on the west side and he seen the officers coming and he laid down in the grass and he hollered to Doug, 'The police are coming.' Well then, when they run, Doug run toward Norman and Kenneth Fisher run the other way; and, when Doug ran toward Norman, he jumped up and started running with Doug."

Defendant raises two issues on this appeal.

(1) Was it reversible error for the court in its instructions to affirmatively exclude jury instructions on the lesser offense of attempted larceny?

(2) Was defendant denied effective counsel because of the representation of both of the defendants by the same attorney?

I

For the first time on this appeal, it is appellant's claim that the trial court should have instructed on the offense of attempted larceny; appellant cites the applicable statute MCLA § 768.32 (Stat Ann 1954 Rev § 28.1055). We wish to point out that there is no evidence present in this case that would support a verdict of guilty of attempted larceny. The facts appearing in the record are to the effect that the defendants had placed on the truck 23 pieces of one-inch and two-inch diameter copper tubing which were 20 feet long. The only challenge to this evidence was to the effect that not 23 pieces but that not more than seven pieces of tubing, and those mostly the one-inch variety, had been placed on the truck at the time. The fact that the defendant actually failed to make away with the copper tubing does not in any way defeat the charged offense.

In 3 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 1798, pp 2143, 2144 it is stated:

"A bare removal, however, from the place in which the respondent found the goods, though he actually does not make away with them, is sufficient to constitute a carrying away."

Also see *People* v. *Bradovich* (1943), 305 Mich 329. It is also true that defendant need not have actually moved the goods himself to have been guilty. In *People* v. *Royce Alexander* (1969), 17 Mich App 30, 32, it is stated:

"It is well established that the asportation need not be effectuated by the perpetrator of the crime. It may be accomplished by a confederate or an innocent agent."

The trial court's instructions which were satisfactory to defendant's counsel at trial appear to this Court to be proper. Error in failing to charge on the legally possible included offenses may occur only where the defendant's theory encompasses such a defense and is supported by some competent testimony. *People* v. *Hoefle* (1936), 276 Mich 428. In other words, in order to warrant an instruction, the offense must be included both legally and factually. *People* v. *Carabell* (1968), 11 Mich App 519, 524.

In the instant case, there was no theory advanced by defendant to support a claim that there was an attempted larceny and, further, there is no evidence that would support, in fact, such an instruction. We find no error as to the first issue.

## II

It is the appellant's claim that he was denied the effective assistance of counsel when he had to share assigned counsel with his codefendant who testified

and implicated defendant by naming him as a participant in the crime.

The codefendant's testimony was, in the main, consonant with the positive and convincing testimony of the two police officers who saw the defendants loading the copper tubing, gave chase when they attempted to flee, and caught them within a matter of seconds. The only inconsistencies were (1) that Kenny Fisher was helping him load the copper tubing instead of defendant; (2) that there had been only seven pieces of copper tubing mostly of the one-inch variety loaded at the time they were discovered, *i.e.,* the value of which would be less than $100, and reduce the crime to a misdemeanor (the trial court submitted this issue to the jury); and (3) that they had been drinking heavily and were intoxicated to the extent that the codefendant could not form in his mind an intent to steal. The first inconsistency is of no harm to appellant, taking into consideration the overwhelming evidence of guilt of both the defendant and the codefendant and the testimony of Mrs. Fisher that appellant had told her that " * * * he walked back around the back of the building on the west side and he seen the officers coming and he laid down in the grass and he hollered to Doug, 'The police are coming' ". This testimony is inconsistent with any recanting or abandoning his part in the crime. The second inconsistency would benefit appellant had the jury found that the number of pieces of tubing had been seven of the small-diameter type, which would have reduced the value of the goods to less than $100 and made the offense a misdemeanor instead of a felony. The third inconsistency would likewise aid appellant, for both the defendant and the codefendant, according to codefendant, consumed large amounts of beer—especially in view of Mrs. Fisher's

testimony stating that appellant told her that he was "stoned" at the time of the offense.

It is difficult to understand how joint counsel in this case, under the undisputed facts, has prejudiced appellant. He fails to point out where the cross-examination of the codefendant would have helped him.

He infers that destroying the credibility of the codefendant might have aided him. It appears to this Court that under the circumstances it would have destroyed any possibility for a verdict of guilty of a misdemeanor or a verdict of not guilty because of intoxication which prevented the defendant from forming in his mind an intent to steal. It is also possible that his trial counsel knew what the answers might be to the unasked questions of which his appellate counsel now insists should have been asked. The procedure followed by trial counsel may have been commendable trial strategy.

The appellant had the perfect right to require the people to prove him guilty and beyond a reasonable doubt. From the record, it appears in this case that the overwhelming evidence satisfied this requirement. There is no evidence in the record to the contrary. The codefendant's testimony was corroborative with the established evidence to a great extent and to the extent that it was inconsistent, it inured to the appellant's benefit.

The recent decision of our Court in the case of *People* v. *Dockery* (1969), 20 Mich App 201, is dispositive of this issue. There it is stated in part as follows at pp 209, 210:

"The instant case does not involve one defendant making an exculpatory statement putting most of the blame on the codefendant (*Sawyer* v. *Brough* [CA4, 1966], 358 F2d 70); nor would it have profited one defendant to attack the credibility of another

(*People* v. *Donohoe* [1962], 200 Cal App 2d 17 [19 Cal Rptr 454]); nor was cross-examination of witnesses inhibited because of conflicting loyalties (*Craig* v. *United States* [CA6, 1954], 217 F2d 355); nor was counsel restricted in final summation because he might injure one defendant by arguing in favor of the others (*People* v. *Donohoe, supra*); nor was representation of one defendant imposed on the retained counsel of the others with knowledge of a possible conflict of interest (*Glasser* v. *United States* [1942], 315 US 60 [62 S Ct 457, 86 L Ed 680]); and, finally, this case does not involve defenses which are factually inconsistent (*People* v. *Welch* [1963], 212 Cal App 2d 397 [28 Cal Rptr 112]). Moreover, at the sentencing hearing there was no indication that the positions of the codefendants were so divergent that their attorney would have been forced to argue for substantially different penalties. *State* v. *Karston* (1955), 247 Iowa 32 (72 NW2d 463).

"The only possible source of prejudice disclosed by the record is the fact that Dockery did not testify, while his codefendants did. Yet, standing alone, in a record totally barren of any indication of a miscarriage of justice, we deem this point insufficient to warrant reversal.

"The right to effective legal representation is fundamental to criminal procedure. Trial courts preferably should not assign a single attorney to represent multiple defendants. Such an assignment, when for good cause made, will only be allowed where the positions of the defendants are not conflicting. The assignment of counsel is designed to aid a defendant and should not itself become a source of prejudice."

Affirmed.
All concurred.