# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SHAE LYNN MULLINS,

        Defendant-Appellant.

FOR PUBLICATION
November 30, 2017
9:00 a.m.

No. 334098
Berrien Circuit Court
LC No. 2015-000156-FH

Before: SWARTZLE, P.J., and SAWYER and MARKEY, JJ.

SWARTZLE, P.J.

Defendant Shae Lynn Mullins convinced her daughter (PD) to tell a school teacher that PD's father had sexually abused the girl. Defendant did so with the expectation that she would get sole or primary custody of PD. The plan quickly unraveled, and defendant was charged and ultimately convicted of contributing to the delinquency of a minor and making a false report of felony child abuse.

On appeal, defendant argues that she is not criminally liable for making a false report because she did not make the report *herself*, but instead the report was made by PD to a school teacher, who then reported the matter to the school principal, who in turn reported the matter to Child Protective Services (CPS). Because defendant used PD and the school officials as "innocent agents," we conclude that defendant can still be held criminally liable as a principal for making a false report of felony child abuse. Concluding that defendant's remaining claims of error are similarly without merit, we affirm her convictions.

## I. BACKGROUND

Defendant and Louis Dominion have a daughter, PD, born in 2006. The parents have never been married, and they have been involved in extensive custody litigation over PD since 2007. Dominion became PD's primary caregiver in January 2009 with defendant having parenting time every other weekend. In November 2013, while PD was visiting defendant, defendant told PD that, if PD told a teacher at school that Dominion "hurt [her] private parts" and locked her in a closet, then PD would be able to spend more time with defendant. There was also testimony that suggested that defendant offered to buy PD a new horse if she made this allegation at school.

-1-

Shortly after this discussion, PD told a teacher that Dominion "hurts [her] and has hurt [her] private parts." PD's teacher reported the statement to the school's principal, who reported the incident to CPS. PD was later interviewed about the allegations, and she admitted that defendant told her to lie.

Defendant was charged with contributing to the delinquency of a minor, MCL 750.145, and making a false report of felony child abuse, MCL 722.633(5). The district court, however, refused to bind defendant over to the circuit court on the charge of making a false report of child abuse. The district court concluded that defendant could not be guilty under MCL 722.633(5) because defendant did not personally make a false report of child abuse. The district court compared the language of MCL 722.633(5) to the language of the false crime report statute, MCL 750.411a. MCL 722.633(5) states that "[a] person who intentionally makes a false report of child abuse or neglect under the act knowing that the report is false is guilty of a crime." For its part, MCL 750.411a contains similar language, and states that a "person who intentionally makes a false report of the commission of a crime, or intentionally causes a false report of the commission of a crime to be made . . . knowing the report is false, is guilty of a crime." Under the principle that the expression of one thing implies the exclusion of other things, coupled with the principle that laws dealing with the same subject should be interpreted harmoniously, the district court concluded that the inclusion of the phrase "or intentionally causes a false report of the commission of a crime to be made" in MCL 750.411a, and the omission of similar language from MCL 722.633(5) must be given effect. Thus, it held that the Legislature did not intend to make punishable a person's intentionally causing a false report of child abuse to be made when that person does not personally make the report.

The prosecution appealed the district court's decision to the circuit court, and the circuit court reversed. In doing so, the circuit court noted that, under the common-law theory of innocent agent, a person was liable for the commission of a crime as a principal when the person used an "innocent other" as an instrumentality to commit the offense. The circuit court commented that MCL 722.633 and MCL 750.411a were codified in different chapters of the compiled laws and that the additional language present in MCL 750.411a was the result of the Legislature's 2004 amendment to MCL 750.411a. Because that amendment was enacted 20 years after MCL 722.633(5) was first enacted, the trial court declined to read MCL 750.411a as conclusive evidence that the Legislature intended to abrogate the common-law doctrine of innocent agent by way of MCL 722.633(5). Accordingly, the circuit court allowed the charge of making a false report of child abuse to proceed to trial.

Before trial, the prosecution noticed defendant of its intent to introduce evidence that, in 2008, defendant made three false reports that Dominion was sexually abusing PD. Defendant objected to the introduction of this evidence, and the trial court ultimately concluded that the evidence was admissible under MRE 404(b):

> [T]he Court finds that evidence of the Defendant's prior allegations or complaints of sexual abuse of [the child] by [Dominion] to CPS, the resulting CPS investigation, resulting parenting time suspension during the CPS investigation, and ultimate disposition of the investigation, are logically relevant to show Defendant's motive and intent to commit the charged offense (intention [sic] false reporting of felony child abuse, MCL §722.633(5)). Similarly, to the extent that it

-2-

appears the object of the charged act (*i.e.* Defendant falsely reporting the child abuse through her daughter) remains at issue, the Court finds that those "other acts" have the requisite concurrence and combination of common features, to support the [prosecution's] purpose of showing Defendant's plan or scheme. Thus, as to these stated "other acts" involving Defendant initiating reports to CPS, the Court finds that the [prosecution has] satisfied their burden of establishing admissibility under MRE 404(b).

At trial, the jury heard evidence that, on three occasions in 2008, defendant took PD to a doctor after PD returned from Dominion's care. Defendant informed the doctor that she had observed redness and swelling in PD's vaginal area, and the doctor reported the concerns to CPS. CPS initiated investigations of each complaint, all of which were unsubstantiated. The jury also heard evidence that these complaints led CPS to file a petition in 2008 against both defendant and Dominion to place PD in foster care while CPS investigated the false allegations. Evidence of this latter petition was not noticed by either party before trial.

The jury ultimately found defendant guilty of making a false report of felony child abuse and contributing to the delinquency of a minor. For these convictions, the trial court sentenced defendant to seven days in county jail and two years' probation.

Defendant appealed her convictions as of right.

## II. ANALYSIS

### A. DEFENDANT WAS PROPERLY CHARGED AND CONVICTED

### AS A PRINCIPAL UNDER MCL 722.633(5)

We first address defendant's argument that under traditional canons of statutory construction, she should not have been charged, let alone convicted of making a false report of felony child abuse because she did not personally make the report and she did not speak to a mandatory reporter. "This Court reviews de novo issues of statutory interpretation." *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008). "The fundamental task of statutory construction is to discover and give effect to the intent of the Legislature." *People v Ambrose*, 317 Mich App 556, 561; 895 NW2d 198 (2016) (internal quotation marks and citation omitted). "The statute's words are the most reliable indicator of the Legislature's intent and should be interpreted based on their ordinary meaning and the context within which they are used in the statute." *Id*. (internal quotation marks and citation omitted). Judicial construction of a statute is only appropriate if reasonable minds could differ regarding the statute's meaning. *People v Stone Transport, Inc*, 241 Mich App 49, 50-51; 613 NW2d 737 (2000).

### 1. MCL 722.633(5) IS NOT LIMITED TO MANDATORY REPORTERS

Defendant argues that she cannot be held criminally liable under MCL 722.633(5) because defendant and PD were not mandatory reporters and the statute only criminalizes false reports by mandatory reporters. She buttresses this argument with a second point—because other provisions of Michigan law criminalize false reports of criminal activity by non-mandatory

reporters, MCL 722.633(5) must be read to be limited solely to mandatory reporters of felony child abuse or neglect. We reject both arguments.

With respect to her first argument, MCL 722.633(5) provides in pertinent part: "A person who intentionally makes a false report of child abuse or neglect under this act knowing that the report is false is guilty of a crime . . . ." Defendant argues that the phrase "under this act" refers to mandatory reporters as defined in the Child Protection Law, and therefore the Legislature clearly intended to limit the scope of the statute to only those designated reporters. MCL 722.623(1) identifies the specific categories of persons who are required to report child abuse under the act, and neither a parent nor a child is included. Given this, defendant maintains that she cannot be found guilty under MCL 722.633(5).

Defendant's argument suffers from a fundamental flaw—while the Child Protection Law mandates that certain persons report suspected child abuse, the law does not preclude a person who is not a mandatory reporter from reporting suspected child abuse. In fact, the Child Protection Law explicitly contemplates these reports. Specifically, MCL 722.624 provides, "In addition to those persons required to report abuse or neglect under [MCL 722.623], any person, including a child, who has reasonable cause to suspect child abuse or neglect may report the matter to the department or a law enforcement agency." A person who chooses, but is not required, to make a report would still be doing so "under this act," i.e., under the authority of MCL 722.624.

Defendant suggests that such a reading would render the phrase "under this act" superfluous. But, just because the reading would encompass all instances of false reporting to CPS of child abuse or neglect—those made by mandatory reporters and non-mandatory reporters alike—this does not mean that "under this act" is without content. Rather, the phrase clarifies that the activity criminalized by MCL 722.633(5) is the making of a specific report to CPS as authorized by the Child Protection Law, as opposed to some other kind of report not involving abuse or neglect of a child or made to some person or entity other than CPS or law enforcement.

As to defendant's second argument, while she contends that other provisions of Michigan law criminalize false reports by non-mandatory reporters, this contention lends no weight to her position. It is well-established that the same activity can violate more than one criminal provision. See *People v Ford*, 262 Mich App 443, 447-448; 687 NW2d 119 (2004) (recognizing that the Legislature may choose to punish the same activity under multiple criminal provisions). Even if her activity might have violated another provision criminalizing false reports, it does not follow that her activity could not also have violated the Child Protection Law, MCL 722.633(5).

Accordingly, because the Child Protection Law expressly contemplates reporting of child abuse by mandatory and non-mandatory reporters, the plain meaning of MCL 722.622(5)'s reference to "[a] person who intentionally makes a false report of child abuse or neglect under this act" covers both mandatory and non-mandatory reporters.

## 2. THE DOCTRINE OF INNOCENT AGENT APPLIES TO MCL 722.633(5)

Defendant next argues that she is not liable under MCL 722.633(5) because she did not personally make the false report of child abuse. The district court agreed with defendant,

concluding that (a) the inclusion of language in a similar statute (MCL 750.411a) that criminalizes a false report of a crime by (i) a person who actually makes the report as well as (ii) a person who causes such a report to be made, and (b) the omission of language in MCL 722.633(5) involving those who cause a report to be made, means that the Legislature intended to hold liable only the former (i) and not the latter (ii) with respect to false reports of child abuse. While not without some logical force, we ultimately agree with the circuit court that the better understanding of MCL 722.633(5) covers both groups.

In construing a statute, the Court's analysis begins with the plain meaning of the statutory language itself. If the plain meaning of the language is clear, then the Court's analysis is at an end, and there is no need to reach for canons of construction for aid. *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999); *Stone Transport*, 241 Mich App at 51. The Legislature, like the other branches of our government, is bound to the dictates of Michigan's Constitution of 1963, including Article III § 7 mandating that common-law doctrines remain in force until they are "changed, amended or repealed" by statute. This means that statutes must be read in light of the common law except to the extent that the Legislature has abrogated or modified it. *J & L Inv Co v Dep't of Natural Resources*, 233 Mich App 544, 549; 593 NW2d 196 (1999); see also *Dawe v Bar-Levar*, 485 Mich 20, 28; 780 NW2d 272 (2010) ("The common law remains in force until modified . . . [and] the Legislature is assumed to know the common law when it enacts a related statutory provision . . . .").

This Court does not lightly infer that our Legislature intended to abrogate or modify the common law. Rather, this Court presumes that the common law remains intact, even when the Legislature enacts a statute on the same or a similar subject. See *Butler v City of Grand Rapids*, 273 Mich 674, 679; 263 NW 767 (1935). When the Legislature intends to change the common law, its language must clearly indicate that intent. See *id.*

Turning to the language of MCL 722.633(5), it is clear that the Legislature intended to criminalize a person's making of a false report of felony child abuse or neglect. It is equally clear that the Legislature did not intend to change, amend, or repeal any aspect of the common law by enacting MCL 722.633(5). Thus, the statute must be read in light of the well-established common-law doctrine of the "innocent agent." Under this doctrine, when a defendant uses another innocent person to accomplish a crime on the defendant's behalf, the defendant is guilty of the crime as a principal, rather than under any of the accomplice-liability theories. See *People v Hack*, 219 Mich App 299, 303; 556 NW2d 187 (1996). Under the doctrine, the innocent agent is not the one who actually commits the offense, but is a mere "instrumentality" through which the defendant commits the offense. *Id.*; see also *People v Fisher*, 32 Mich App 28, 33; 188 NW2d 75 (1971) (noting in a larceny case that the asportation element need not be effectuated by the perpetrator of the crime, but may be accomplished by an innocent agent).

This Court has found the following passage from Dressler, Understanding Criminal Law, 2nd ed, § 30.06(B)(1), p 446, helpful to understand the concept:

> If *D* coerces *X* to commit a theft by threatening *X*'s life, *X* will be acquitted of larceny on the ground of duress. Today, and according to common law principles, *D* may be convicted of larceny. *X* was *D*'s innocent instrumentality. Therefore, at common law, *D* was the principal in the first degree of the offense.

-5-

> Conceptually, *D's guilt is not founded on accomplice-liability principles.* Instead, *D* is *directly* liable for committing the crime through the instrumentality; *D's* guilt is not derived from another culpable person. *X's* acquittal, therefore, presents no bar to the conviction of the only culpable party. [See *Hack*, 219 Mich App at 303.]

Considering the facts of this case in line with the innocent-agent doctrine, we find no error with charging and convicting defendant under MCL 722.633(5). As the trial evidence showed, defendant repeatedly used PD and others as agents to make false reports of child abuse against PD's father. As a result, on at least three occasions, PD has been removed from her father's care, and, on at least one occasion, PD was removed from the care of both her parents and placed into foster care. With respect to the charged offense, defendant used PD to report to her teacher, who then reported the matter to the school principal, who in turn reported the matter to CPS. Neither PD, the teacher, nor the school principal intended to make a false report; instead, they were acting as the innocent agent of defendant's malicious plan. Nor was the chain of agents too attenuated under the facts of this case, as PD was a minor and both the teacher and principal were mandatory reporters under MCL 722.623, meaning that they had no choice or discretion under the law but to report the allegations in accordance with the Child Protection Law.

Because we conclude that MCL 722.633(5) is not ambiguous with respect to holding liable someone who uses an innocent agent to make a false report of child abuse, we need not resort to the canons of construction used by the district court and suggested by defendant. The district court correctly noted that MCL 722.633(5) shares a similar subject with MCL 750.411a, as both criminalize the making of false reports of certain criminal activity. And, the district court applied a common canon of construction that instructs that where language is included in one provision but omitted from a related provision, then the Legislature intended for that omission to be given effect by courts. *People v English*, 317 Mich App 607, 615; 897 NW2d 184 (2016). But, as explained earlier, these canons are not necessary when the plain meaning of the statutory language is clear.

Moreover, we note in passing that the phrase "intentionally causes a false report" was not added to MCL 450.411a until 2004. 2004 PA 104. The current version of MCL 722.633(5) that does not have that phrase was first enacted in 1975 and later amended in 1996. 1975 PA 238; 1996 PA 309. One could argue that had the Legislature intended to keep MCL 722.633(5) consistent with MCL 7450.411a, it would have enacted identical amendments to both statutes in 2004. This would, however, stretch the canon of *in pari materia* too thin. There are likely many reasons—policy- and non-policy alike—why the Legislature would chose to amend one section of law without at the same time amending a related section, including interest, resources, politics, attention, etc. Reflecting this reality, our Court has limited the canon to instances "when the 'related statute' is a *prior* enactment." *English*, 317 Mich App at 616 (emphasis added). When the related statute was enacted or amended after the statute at issue, the canon is generally inapplicable. *Id*. As the Supreme Court has observed, "It is one thing to infer legislative intent through silence in a simultaneous or subsequent enactment, but quite another to infer legislative intent through silence in an earlier enactment, which is only 'silent' by virtue of the subsequent enactment." *People v Watkins*, 491 Mich 450, 482; 818 NW2d 296 (2012).

Under the law, defendant was criminally liable as a principal, not an agent. We find no error in charging and convicting defendant of making a false report of felony child abuse.

## B. OTHER-ACTS EVIDENCE

Defendant also raises several claims of trial error under the Michigan Rules of Evidence. "The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (internal quotation marks and citation omitted). Yet, when "the decision involves a preliminary question of law, which is whether a rule of evidence precludes admissibility, the question is reviewed de novo." *McDaniel*, 469 Mich at 412. "A preserved error in the admission of evidence does not warrant reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013) (internal quotation marks and citation omitted).

## 1. NO ABUSE OF DISCRETION IN ADMITTING OTHER-ACTS EVIDENCE

Defendant argues that the trial court abused its discretion in admitting evidence related to the 2008 CPS investigations involving allegations that Dominion sexually abused his daughter. Under MRE 404(b)(1):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

In *People v Sabin*, 463 Mich 43, 55-56; 614 NW2d 888 (2000), our Supreme Court held that a trial court does not abuse its discretion if its admission of other-acts evidence meets the three-part test articulated in *Huddleston v United States*, 485 US 681, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988), that was adopted in *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993). Under that test:

> First, the prosecutor must offer the other acts evidence under something other than a character to conduct or propensity theory. MRE 404(b). Second, the evidence must be relevant under MRE 402, as enforced through MRE 104(b), to an issue of fact of consequence at trial. Third, under MRE 403, a determination must be made whether the danger of undue prejudice substantially outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under Rule 403. [*Sabin*, 463 Mich at 55-56 (selected internal citations and quotation notation omitted).]

See also *People v Denson*, 500 Mich 385, 316-317; 902 NW2d 306 (2017) (explaining that, to be admissible under MRE 404(b), other-acts evidence must be offered for a proper purpose as well as be logically relevant (i.e., material and probative), and the probative value must not be substantially outweighed by unfair prejudice).

The evidence from prior CPS investigations showed that on three separate instances in 2008, defendant sought medical attention for PD after observing redness and swelling in PD's vaginal area. Every instance immediately followed a weekend in which Dominion had parenting time with PD. The physician, a mandatory reporter of child abuse, contacted CPS, and then CPS and the police opened an investigation into Dominion involving possible sexual abuse.[1] Dominion's parenting time was suspended during each investigation. After each investigation was closed as unsubstantiated, Dominion's parenting time resumed. In the instant case, defendant instructed PD to tell a teacher, a mandatory reporter, that Dominion "hurt [her] privates." PD indicated that defendant told her to make the false allegation so that she could spend more time with defendant.

In both the charged and uncharged conduct, instead of personally lodging a complaint with CPS, defendant used PD to make or infer an allegation of abuse to a mandatory reporter, who would then be legally required to report the abuse to CPS. In each instance, CPS would initiate an investigation of Dominion, and PD would be removed from her father's direct care. Given the similar victims—PD and Dominion—as well as the similar pattern—defendant, through PD, caused a report to be made to CPS and an investigation of Dominion inevitably followed—the uncharged conduct from 2008 was logically relevant under MRE 404(b) to show defendant's common plan, scheme, or system in using PD to make a false allegation of sexual abuse against Dominion in 2013. We likewise find that the uncharged conduct was also relevant to show defendant's motive for causing the false report to be made in the instant case in that the false report could cause CPS to remove PD from Dominion's care.

Regardless of its relevance, defendant also argues that the other-acts evidence was unduly prejudicial to her defense such that it should have been excluded under MRE 403. "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998). As discussed above, the other-acts evidence involving the initiating of the three CPS investigations in 2008 was highly probative to show that defendant used a continuing plan or scheme to use CPS investigations to suspend Dominion's parenting time so that she would have full or primary custody of her daughter. Although this evidence was prejudicial to defendant, it was not unfairly prejudicial or otherwise so prejudicial that an instruction to the jury under MRE 105 would not cure it. See *VanderVliet*, 444 Mich at 55. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the other-acts evidence.

2. DEFENDANT OPENED THE DOOR TO THE 2008 CPS PETITION TESTIMONY

---

[1] Defendant argues that the prosecution did not offer any evidence to show that the physician actually called CPS. This argument is without merit as defendant herself testified that the physician contacted CPS after defendant brought PD to the physician's office.

Defendant also argues that testimony regarding the 2008 CPS petition filed against her was inadmissible because the prosecution never noticed her of its intent to admit such evidence and because the evidence's probative value was substantially outweighed by the danger of unfair prejudice. Under MRE 404(b)(2), absent good cause, a prosecutor must provide advance notice of the general nature of evidence it intends to introduce at trial. Despite defendant's claim of insufficient notice, the record indicates that it was defendant herself who introduced the specific allegations of the 2008 CPS petition at trial. Dominion briefly testified about the 2008 CPS petition as it involved him but did not testify about the allegations in the petition. Specifically, Dominion testified in relevant part:

> *Q*. Now, did anything change in custody in terms of [your daughter]?
>
> *A*. It got to the point where the CPS . . . finally petitioned the Court to take [my daughter] away from her parents.
>
> *Q*. And after—that was after the third unsubstantiated allegation?
>
> *A*. That was past the third one. It was in October of 2008.
>
> *Q*. And did you cooperate with that?
>
> *A*. Yes, I did.
>
> *Q*. And then did you get—after that was all taken care of, did you receive time with [your daughter]?
>
> *A*. After that was taken care of, she was put into foster care. [My daughter] was put in foster care so that they could evaluate myself and the other parent.
>
> *Q*. Okay. We are not going to get into that part of it. We're not going to . . . .
>
>                         * * *
>
> *Q*. Eventually, when that case was taken care of, did you end up getting custody, having time with [your daughter]?
>
> *A*. Yes.

This testimony provides only a timeline regarding his custody of PD, and therefore did not implicate the notice provisions of MRE 404(b).

Rather, it was defendant who introduced testimony implicating MRE 404(b) when defense counsel questioned defendant whether the petition was in response to her making false allegations to CPS, and she responded that she did not remember:

> *Q*. . . . at that point, was there a petition filed at all?

*A*. Yes.

*Q*. and at some point in 2008, did that petition become about you?

*A*. Yes.

*Q*. That came about whether you were making false allegations or something else? Do you know what the petition was about?

*A*. I don't remember the specific what—what it was actually about, I just remember that it was—it was about me and if I was doing something to cause [my daughter's] injuries or they'd come—it was something about botched evidence.

On cross-examination, the prosecutor asked defendant additional questions about the 2008 CPS petition. Defense counsel objected to the relevance of the testimony. The trial court overruled the objection, stating "No, I'm going to allow it. It's related to—you brought up the petition." Defendant does not take issue on appeal with this ruling, and we likewise find no error. Because defendant was the party who first pursued the substantive allegations involving the 2008 petition, any prejudice flowing from the evidence was of defendant's own making. We find defendant's claim to be without merit.

### 3. THE PROSECUTOR'S CLOSING ARGUMENT WAS NOT IMPROPER

Finally, defendant asserts that the prosecutor committed misconduct in his closing argument by asserting that defendant essentially had a propensity for making false reports of sexual abuse to CPS. "Because the challenged prosecutorial statements in this case were not preserved by contemporaneous objections and requests for curative instructions, appellate review is for outcome-determinative, plain error." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Prosecutorial misconduct issues are decided on a case-by-case basis. *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). This Court reviews "the prosecutor's statements in context to determine whether the defendant was denied a fair and impartial trial." *Id*. The prosecutor's statements "are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). Generally, prosecutors are given great latitude regarding their arguments and are "free to argue the evidence and reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

During closing, the prosecutor made several references to the investigations in 2008. He stated that defendant used other persons to get CPS involved and argued that defendant had been making false reports of sexual abuse since 2008. Although the arguments were not made in the blandest of terms, they were consistent with the evidence to show defendant's common scheme, plan, or system of falsely reporting child abuse and to show defendant's motive to make the instant allegations. The prosecutor did not commit misconduct in his closing argument.

Even if there had been misconduct, the trial court instructed the jury that "[t]he lawyers' statements, argument, and any commentary are not evidence. They are only meant to help you understand the evidence and each side's legal theories. You should only accept the things the

lawyers say that are supported by the evidence or by your own common sense and general knowledge." Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Accordingly, defendant has not shown any outcome-determinative error involving the prosecutor's closing.

### III. CONCLUSION

MCL 722.633(5) prohibits a person, through an innocent agent, from making a false report of felony child abuse, whether or not the person is a mandatory reporter. Defendant used her daughter and school officials to make a false report of felony child abuse against her daughter's father, and by doing so, defendant violated MCL 722.633(5), and we find no error by the trial court notwithstanding defendant's claims to the contrary. Similarly finding no error with respect to the trial court's evidentiary rulings, we affirm defendant's convictions.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Jane E. Markey