*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES DARSHAWN POWELL,

        Defendant-Appellant.

UNPUBLISHED
June 10, 2021

No. 352162
Wayne Circuit Court
LC No. 19-003338-01-FC

Before: K. F. KELLY, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). He was sentenced to 25 to 35 years' imprisonment for his CSC-I conviction and 5 to 15 years' imprisonment for his CSC-II conviction. Finding no errors warranting reversal, we affirm defendant's convictions and sentences, but remand for the ministerial task of correcting the sentencing information report (SIR).

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case concerns defendant's convictions and sentences stemming from his sexual abuse of the victim, DD, who was 10 years old at the time of the abuse. From July 2018 until September 2018, DD predominantly lived with his mother. During that time period, several others lived in the home including DD's older brother, DI. Defendant, a family friend, also sometimes stayed at the home.

In mid-September 2018, DD was sitting on the edge of a bed playing video games in the basement of his mother's home. Defendant came into the basement, indicating he wanted to watch DD play the video games. Defendant got onto the bed with DD, laid down behind him, and wrapped his arms around DD under DD's waist. DD moved defendant's hands, but defendant continued his inappropriate touching while DD tried to play his video game. Eventually, DD went outside and played catch with his sisters for an hour. DD returned to the basement and laid down because he was tired. Defendant came into the basement again, pulled DD's jeans to his ankles, and performed fellatio. DD did not know what to do; he was scared and shivering.

-1-

DD described two other instances of sexual abuse by defendant. One instance occurred in the living room of the home of DD's mother as DD was playing a video game on defendant's phone, and DI was playing a zombie game on his own phone. DD's grandmother was also present in the room, but she fell asleep. As DD was playing the video game on defendant's cellular telephone, defendant put his hands down DD's pants and touched DD's penis. Defendant then "did the same thing, like, pulled [DD's] pants down to [DD's] ankles" and defendant performed fellatio on DD.

DD also described an instance of sexual abuse that occurred when DD and DI spent the night at the home of defendant's mother. On that occasion, defendant, DD, and DI took turns playing a video game on defendant's video game console. In defendant's bedroom, DD, DI, and defendant each made their own makeshift beds and laid on them. At some point, defendant moved closer to DD, which scared DD when he apparently rolled over in defendant's direction. DD closed his eyes and fell asleep. Sometime later, DD woke up and defendant had his mouth on DD's penis. DD struck defendant to stop the activity. DI did not hear the incident and continued to sleep.

The incident that transpired in the basement was the last act of sexual abuse that occurred. In a distraught state, DD reported defendant's actions to DI and DD's mother. DD's mother contacted DD's father and the police. DD previously spent time living at both his mother and his father's homes, but went to live with his father after the sexual abuse was revealed. Defendant was charged with one count of CSC-I and one count of CSC-II. In addition to his trial testimony, DD made a statement during a Kids-TALK interview and testified at the preliminary examination. On cross-examination, defense counsel highlighted DD's inconsistencies in his interview and prior testimony. At one point, DD indicated that defendant had abused him over 30 times. Additionally, DD gave a statement that defendant's abuse occurred 13 years ago, although DD was only 10 years old. The defense theorized that DD falsified the allegations against defendant in order to live solely with his father where the child was in a structured and stable environment and properly fed. Although both the prosecutor and the defense discussed the inconsistences in DD's testimony and the import of his age in evaluating his credibility, defendant was convicted as charged. This appeal followed.

## II. PROSECUTORIAL MISCONDUCT

Defendant first alleges that the prosecutor improperly implied he had special knowledge regarding DD's truthfulness, improperly vouched for DD's credibility, and improperly presented false testimony that the prosecutor was required to correct. We disagree.

To preserve a claim of prosecutorial misconduct, there must be a contemporaneous objection and a request for a curative instruction. *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). Defendant did not object to the prosecutor's statements addressing DD's credibility, and he did not allege that the prosecutor deliberately presented false testimony. Additionally, no curative instruction was requested. When prosecutorial statements are not challenged with contemporaneous objections and requests for curative instructions, this Court reviews the unpreserved issue for plain error affecting the defendant's substantial rights. *Id*. at 201-202.

"To establish entitlement to relief under plain-error review, the defendant must establish that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected substantial rights." *People v Lockridge*, 498 Mich 358, 392-393; 870 NW2d 502 (2015). The requirement that the error was plain generally requires a showing of prejudice such that the error affected the outcome of the lower court proceedings. *Id*. Even if the plain error criteria are satisfied, the appellate court must exercise discretion in determining if reversal is warranted. *Id*. "Reversal is warranted only when the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings independently of the defendant's innocence." *Id*. Defendant failed to show plain error affecting his substantial rights.

Prosecutorial misconduct[1] issues are evaluated on a case-by-case basis. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). To obtain relief for a claim of prosecutorial misconduct, a defendant must demonstrate that he was denied a fair trial. *People v Bosca*, 310 Mich App 1, 26; 871 NW2d 307 (2015). When a claim of misconduct is premised on a prosecutor's statements, the remarks must be examined in context to determine if the defendant was denied a fair and impartial trial. *Mullins*, 322 Mich App at 172. The statements must be assessed in light of the defense arguments and the relationship between the comments and the evidence presented at trial. *Id*. With regard to argument, the prosecutor has great latitude and is free to argue the evidence and all reasonable inferences arising from the evidence as it relates to the theory of the case. *Id*.

A claim of prosecutorial misconduct cannot be premised on a good-faith effort to admit evidence because the prosecutor may seek to introduce evidence that he legitimately believes will be admitted by the court. *People v Noble*, 238 Mich App 647, 660-661; 608 NW2d 123 (1999). Pursuant to their constitutional obligations of due process and fundamental fairness, prosecutors must report to the trial court and the defendant when government witnesses lie under oath. *People v Herndon*, 246 Mich App 371, 417; 633 NW2d 376 (2001). "[T]he prosecutor may not knowingly use false testimony to obtain a conviction and . . . a prosecutor has a duty to correct false evidence." *Id*. However, the fact that a witness's testimony conflicts with the witness's earlier statements does not establish that a prosecutor presented perjured testimony. See *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Reversal is not required when a prosecutor does not "attempt[] to keep the contents of those previous statements from defendant," and "defense counsel was afforded ample opportunity to impeach the witnesses' credibility at trial with the prior statements." *Id*. (citations omitted).

### A. SPECIAL KNOWLEDGE AND VOUCHING FOR WITNESS

---

[1] Although defendant characterizes the prosecutor's questions and statements as misconduct, this Court recently explained that a fairer label for most claims of prosecutorial misconduct would be "prosecutorial error," because only the most extreme and rare cases rise to the level of "prosecutorial misconduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). However, we will use the phrase "prosecutorial misconduct" because it has become a term of art in criminal appeals. *Id*.

Contrary to defendant's assertion, the prosecutor did not improperly imply that he had special knowledge regarding DD's truthfulness or improperly vouch for DD's credibility. Rather, during the prosecutor's closing argument, he addressed the inconsistency of DD's testimony and how the jury should consider DD's age when evaluating his credibility. The prosecutor stated:

> And now, I'm not going to stand here before you and say that [DD] remembered every single detail and was completely consistent across all talons of this story. He wasn't. That was very clear. There were a lot of inconsistencies, but I want to point out to you that his general telling of these events was consistent. He was consistent from his Kids Talk when he talked about the same three instances. He talked about the time in the basement. He talked about the time in the living room and he talked about the time at [defendant's] mother's house. That was consistent.
>
> And ladies and gentlemen, when you consider this, the Judge already gave you these instructions on the screen and I'm not going to go through all of them, again, but one of these instructions sticks out to me in this case. It's the second to last one: "Does the witness' age and maturity affect how you judge his or her testimony?"
>
> [DD] is now . . . 11-years-old. This happened to him one year ago or almost one year ago now, when he was 10. If you show me a 10-year-old that can perfectly recall a traumatic event, that just—that doesn't happen. The age of the witness definitely should affect how you judge his or her testimony because you can't expect a 10-year-old to tell you every single detail, especially when he has been asked multiple times about this.
>
> So, ladies and gentlemen, I also want to point out one other thing is that [DD], I think, . . . he did get up there and to the best of his ability, tell you how the Defendant sexually abused him, and again, those inconsistencies, I think, can be attributed to his concept of time. He does not have a concept of the time like you or I would have. He is getting a lot of these details mixed up. He is getting a lot of these incidences pushed into one because he is trying to tell one coherent story when this has happened to him at least three times. We know in his Kids Talk, he said, it happened over and over and over, again. So, ladies and gentlemen, I ask you to take his age into consideration when you judge his credibility.
>
> I think, [DD], based on the testimony he gave you and based on other evidence in this case did his best to tell you the truth. The Defendant took [DD's] penis and put it in his mouth and performed fellatio on him. Now, I'm going to go through each of the counts and elements that I have to satisfy and I'm not going to belabor this point. You all listened to the testimony. You all heard what [DD] had to say. You all heard what the other witnesses had [to] say.

Thus, the record discloses that the prosecutor did not indicate that he had special knowledge or vouch for the credibility of his witnesses, particularly DD. Rather, the prosecutor explained that there were inconsistencies in DD's testimony and noted that DD's age may explain his

inconsistencies. Indeed, although DD was only 10 years old when the abuse occurred, he previously gave a statement that the abuse occurred 13 years ago. The prosecutor referenced the inconsistent nature of DD's testimony, but reminded the jury of the trial court's instructions regarding qualities of a witness that may affect the jury's perception of the witness's credibility, which included the witness's age. The prosecutor's statements did not suggest he was relying on past experience in other cases involving child victims, and his statements did not imply he had special knowledge of DD's credibility. Instead, the prosecutor encouraged the jury to determine for itself whether DD was credible. Thus, when the prosecutor's statements are considered in the context of the entire record, the argument was consistent with the trial court's instructions. Indeed, even during his opening argument, defense counsel noted that DD's testimony varied "because [DD] is a 10-year-old boy[.]" The prosecutor's statements during his closing arguments were not improper, and the prosecutor did not engage in misconduct. Defendant was not deprived of his right to due process or a fair trial, *Bosca*, 310 Mich App at 26, and he failed to show plain error affecting his substantial rights, *Lockridge*, 498 Mich at 392-393.

## B. DUTY TO CORRECT FALSE TESTIMONY

We also reject defendant's contention, raised in his Standard-4 brief, that the prosecutor presented false testimony that the prosecutor was required to correct.

Defendant takes issue with DD's statements regarding how many times he was allegedly abused by defendant, that defendant did not return to the house after the September 11, 2018 incident, and DD's claim that defendant abused him when others were in the room. However, any disparity in the testimony of witnesses presented an issue for resolution by the jury and did not reflect perjured testimony. A conflict between a witness's testimony and other relevant evidence presents an issue for resolution by the jury. See *People v Savage*, 327 Mich App 604, 614; 935 NW2d 69 (2019). This Court must defer to the jury's role in determining the weight of the evidence and the credibility of the witnesses, and we resolve conflicts in the evidence in favor of the prosecution. *Id.* The jury may believe or disbelieve, in whole or in part, the evidence admitted at trial. *People v Unger*, 278 Mich App 210, 228; 749 NW2d 272 (2008). That is, the trier of fact has the right to disregard all, part, or none of the testimony of a witness. See *People v Goodchild*, 68 Mich App 226, 235; 242 NW2d 465 (1976). Thus, this Court will not weigh the competing evidence because the jury had the special opportunity to do so while assessing the credibility of the witnesses that appeared before it. *Unger*, 278 Mich App at 228-229. There is no indication that the prosecutor knowingly presented false testimony. Rather, the disparities in the witness testimony were acknowledged and resolved by the jury. Defendant was not deprived of his right to due process or a fair trial, *Bosca*, 310 Mich App at 26, and he failed to show plain error affecting his substantial rights, *Lockridge*, 498 Mich at 392-393.

## III. ADDITIONAL ARGUMENTS FROM DEFENDANT'S STANDARD-4 BRIEF

Defendant seemingly raises the following claims in his Standard-4 brief: (1) trial counsel was ineffective because he failed to impeach a witness at trial; (2) "inducements" offered by the prosecution created an "incentive for perjury" and deprived defendant of due process; (3) DD's mother was "not a free agent in her testimony" and her testimony was "tainted"; (4) there was an extrinsic influence on the jury and the trial court was required to determine the effect that

extraneous influence had on the jury; and (5) the testimony of the witnesses was insufficient for conviction.

We conclude defendant has abandoned each of these issues. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004) (citation omitted). Defendant merely provided cursory analysis of the issues and completely failed to apply legal authority to the facts of this case. Instead, defendant merely cited various propositions of law or headnotes without appropriate explanation. In light of the deficiencies, we do not address these abandoned claims.

## IV. OFFENSE VARIABLE (OV) 11

Defendant contends that the trial court erred in assessing 50 points for OV 11[2] and, as a result, he is entitled to resentencing. Although we agree that the trial court erred in assessing 50 points for OV 11, defendant is not entitled to resentencing because he was sentenced to a 25-year mandatory minimum sentence.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

## A. ANALYSIS

OV 11 is scored for criminal sexual penetration and is assessed 50 points if "[t]wo or more criminal sexual penetrations occurred." MCL 777.41(1)(a). In assessing OV 11, the trial court must "[s]core all sexual penetrations of the victim by the offender arising out of the sentencing offense." MCL 777.41(2)(a). Additional instances of penetration "extending beyond the sentencing offense" are accounted for in OVs 12 (contemporaneous felonious criminal acts) or 13 (continuing pattern of criminal behavior). MCL 777.41(2)(b); see also MCL 777.42; MCL 777.43. Importantly, the trial court must "not score points for the 1 penetration that forms the basis of a first- or third-degree criminal sexual conduct offense." MCL 777.41(2)(c). In *People v Johnson*, 474 Mich 96, 100; 712 NW2d 703 (2006) (citation omitted), the Supreme Court explained that

---

[2] At the sentencing hearing, OV 11 was scored at 0 points. The trial court advised that 50 points may be the more appropriate score and asked counsel to contest the score. Defense counsel questioned whether the alleged other acts of penetration were proven by a preponderance of the evidence. The trial court found that the prosecutor satisfied the necessary requirements to support a score of 50-points for OV 11. On appeal, defendant contests whether MCL 777.41(1)(a) can be satisfied in light of the statutory language. Generally, an unpreserved issue is reviewed for plain error affecting substantial rights. *Lockridge*, 498 Mich at 392-393. However, a legal challenge for which all necessary facts are presented is raised and may be addressed. See *People v Williams*, 256 Mich App 576, 584; 664 NW2d 811(2003).

"arising out of the sentencing offense" "means that the 'sexual penetration of the victim must result or spring from the sentencing offense.' " The Court also explained:

> [W]e have previously defined "arising out of" to suggest a causal connection between two events of a sort that is more than incidental. We continue to believe that this sets forth the most reasonable definition of "arising out of." Something that "aris[es] out of," or springs from or results from something else, has a connective relationship, a cause and effect relationship, of more than an incidental sort with the event out of which it has arisen. For present purposes, this requires that there be such a relationship between the penetrations at issue and the sentencing offenses. [*Id*. at 101.]

Recently, in *People v Lampe*, 327 Mich App 104, 118; 933 NW2d 314 (2019), this Court explained:

> [D]efendant argues that, because he received two convictions for CSC-III, neither penetration resulting in a conviction could be considered when assessing points for OV 11. However, this Court has repeatedly rejected this argument. See *People v Cox*, 268 Mich App 440, 455-456; 709 NW2d 152 (2005); *People v McLaughlin*, 258 Mich App 635, 672-678; 672 NW2d 860 (2003); [*People v*] *Mutchie*, 251 Mich App [273,] 278-281; 650 NW2d 733 [(2002), aff'd 468 Mich 50 (2003)]. In particular, this Court has concluded that "OV 11 requires the trial court to exclude *the one penetration* forming the basis of the offense when the sentencing offense itself is first-degree or third-degree CSC." *McLaughlin*, 258 Mich App at 676 (emphasis added). All other sexual penetrations arising from the sentencing offense, including penetrations resulting in separate CSC-I or CSC-III convictions, are properly considered under OV 11. See *Cox*, 268 Mich App at 455-456; *McLaughlin*, 258 Mich App at 672-678; *Mutchie*, 251 Mich App at 278-281. [Footnote omitted.]

In concluding OV 11 was properly scored at 50 points, the trial court merely addressed the number of penetrations. The trial court erred because it did not consider that it could only score "sexual penetrations of the victim by the offender *arising out of the sentencing offense*." MCL 777.41(2)(a) (emphasis added). There was no evidence that the three penetrations at issue arose out of each other, or had any connection, beyond the fact they involved the same defendant and the same victim. Each penetration occurred in a different location at different times.[3] But a sexual penetration arises out of the sentencing offense when it springs or results from the sentencing offense and has a causal relationship that is more than incidental. *Johnson*, 474 Mich at 100. The sentencing offense was the penetration that occurred in the basement of the home of DD's mother and DD testified this instance of sexual abuse was the last time defendant abused him. Thus, because the two sexual penetrations that occurred in the living room of the home of DD's mother

---

[3] While true two penetrations occurred at the home of DD's mother (one in the basement, the other in the living room), they occurred on separate occasions. The third penetration occurred at the home of defendant's mother, on an occasion separate from the penetrations that occurred at the home of DD's mother.

and the home of defendant's mother happened *before* the sentencing offense, they necessarily could not have arisen out of the sentencing offense. See *id.* at 101 (emphasis added). Moreover, as MCL 777.41(2)(b) states, additional instances of penetration "extending beyond the sentencing offense" are accounted for in OVs 12 (contemporaneous felonious criminal acts) or 13 (continuing pattern of criminal behavior). Here, the trial court assessed 0 points for OV 12 and 0 points for OV 13. The additional penetrations that occurred at different times would have been more appropriately considered under OVs 12 and 13, not OV 11. The same is true for the prosecution's assertion that the sexual penetrations at issue were part of a "pattern of sexual predation against" DD "within a span of three months." A pattern of criminal behavior is covered by OV 13, while predatory conduct is covered by OV 10, MCL 777.40. Further, although OV 10 allows a score of 15 points for instances where "[p]redatory conduct was involved," MCL 777.40(1)(a), OV 10 was only assessed 10 points. Therefore, defendant's conduct and the sexual penetrations at issue were more appropriately considered under OVs 10, 12, and 13, not OV 11. Accordingly, OV 11 should have been assessed zero points.[4]

Although reducing OV 11 from 50 to 0 points changes defendant's total OV score to such a degree that it changes his guidelines recommended minimum range, the trial court imposed defendant's sentence according to the mandatory minimum sentence set forth in MCL 750.520b(2)(b). Thus, the trial court had no discretion to depart from the mandatory minimum despite the error regarding OV 11. That is, the guidelines' minimum recommended sentence range had no impact on defendant's sentence, and an error in the scoring would not warrant any relief. See MCL 769.34(2) (indicating that where a statute mandates a minimum sentence, a sentencing court must impose that sentence). Therefore, defendant is not entitled to a remand for resentencing. Nonetheless, we remand for the ministerial task of correcting the SIR to accurately reflect defendant's total OV score in light of the erroneous scoring of OV 11. See *People v Harmon*, 248 Mich App 522, 533; 640 NW2d 314 (2001).

We affirm defendant's convictions and sentences, but remand for the ministerial task of correcting the SIR to accurately reflect defendant's total OV score in light of the erroneous scoring of OV 11. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle

---

[4] We conclude that the *Johnson* decision is controlling and reject the prosecutor's reliance on *People v Baskerville*, ___ Mich App ___; ___ NW2d ___ (2020) (Docket No. 345403) as distinguishable.