*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTOINE DASHAUN FORD,

Defendant-Appellant.

UNPUBLISHED
May 14, 2020

No. 345097
Wayne Circuit Court
LC No. 17-011086-01-FC

Before: BECKERING, P.J., and SAWYER and GADOLA, JJ.

PER CURIAM.

Defendant was convicted after a jury trial of second-degree murder, MCL 750.317, possession of a firearm during the commission of a felony (felony-firearm) (third offense), MCL 750.227b, and felon in possession of a firearm (felon in possession), MCL 750.224f. He was sentenced to 35 to 70 years in prison for the murder conviction, 10 years for the felony-firearm conviction, and 2 to 5 years for the felon-in-possession conviction. Defendant appeals as of right. Finding no error, we affirm.

## I. FACTS

In the early morning hours of October 16, 2017, defendant and the victim, Tyrese Ivey, were in an upstairs apartment at a house in Detroit, Michigan where drugs were regularly sold and used. Defendant previously had sold drugs at the house and previously had been seen at the house armed with a gun. The victim approached defendant and asked him if he was willing to talk about a fight that had occurred earlier between defendant and one of the victim's family members. The two men went outside onto the back balcony of the apartment. There, a struggle ensued and defendant shot and killed the victim.

At trial, defendant testified that he accidently shot the victim during a struggle in which he was defending himself from the victim. Defendant testified that while on the balcony the victim pointed a handgun at him, and the two men struggled for control of the gun. During the struggle, the two men fell down the balcony stairs. Defendant testified that he was able to wrestle the gun from the victim, but when the victim pulled defendant's sweatshirt over his head, defendant blindly

fired shots at the victim. Defendant testified that he was injured during the struggle, and that after he shot the victim he did not go back inside the apartment, but instead fled through the front yard.

No witnesses saw the shooting, but two witnesses inside of the apartment testified that they heard gunshots and that defendant came back into the apartment before fleeing out the front door. One of the witnesses testified that defendant did not appear to have any injuries.

A woman who lived in one of the apartments in the house, and who was the aunt of one of the people involved in the earlier dispute with defendant, testified that two or three weeks after the shooting, defendant came into her bedroom one night and hugged her, asked her to forgive him, and told her that he had not meant to kill the victim. Another woman staying in the same room testified that she heard defendant tell the aunt that he did not mean to kill the victim. Defendant was thereafter arrested and charged with killing the victim.

## II. DISCUSSION

### A. UNSOLICITED STATEMENTS

On appeal, defendant first contends that he was denied a fair trial because certain witnesses made unsolicited and prejudicial comments during trial. Defendant did not object to the statements at trial, thereby failing to preserve the issue for review by this Court. See *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). We review an unpreserved allegation of error, whether the error is constitutional or nonconstitutional, for error affecting the defendant's substantial rights, and "should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 252-253.

At trial, three witnesses, Bobby Farley, Jamayea Cheeks, and Janicea Cheeks, made unsolicited statements. While being cross-examined by defense counsel, Farley stated "I also heard that [defendant] totally confessed anyway." The trial court immediately told the witness to "just answer the question." Farley then asked the trial court if he could use the bathroom, and the trial court took a break in the proceedings to allow him to do so. Farley then apparently made statements on his way out of the courtroom. When the trial resumed, the trial court instructed the jury: "However I want to advise you as Mr. Farley was leaving the witness stand I know he was talking. I did not hear any specific words that he said but if any of you did you must disregard those unsolicited comments."

During cross-examination of Jamayea by defense counsel, she began repeatedly asking defendant "why," apparently asking why defendant had shot the victim; this was not responsive to any question posed. The trial court told the witness to pay attention to defense counsel, and the cross-examination continued without further interruption. Similarly, Janicea made statements during her testimony that were not responsive to any questions, asserting that defendant had committed the crime and was going to jail. Again, the trial court instructed the jury to disregard these statements.

An error warrants a mistrial only when it prejudices the defendant, impairing his ability to receive a fair trial. *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009). When a mistrial is sought based upon the unsolicited statement of a witness, the mistrial should be granted only if the alleged error "is so egregious that the prejudicial effect can be removed in no other

-2-

way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992) (citation omitted). The trial court's instructions to the jury are presumed to cure most errors, *People v Mullins*, 322 Mich App 151, 173; 911 NW2d 201 (2017), and jurors are presumed to follow their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011).

Here, Farley's statement regarding the confession cannot be deemed prejudicial. Defendant testified that he shot the victim, albeit accidentally while defending himself. A woman living in the house testified that defendant confessed to her that he had killed the victim, and another women staying in the house testified that she heard defendant make that statement to the first woman. Because ample evidence, including defendant's own testimony, established that defendant admitted to shooting the victim, Farley's statement that he heard that defendant had confessed was not prejudicial. Also, defendant has not established that the jury heard Farley's mutterings as he left the courtroom or that the mutterings conveyed anything prejudicial.

Similarly, Jamayea's statements asking defendant why he shot the victim, and Janicea's statement that defendant had shot the victim and was going to jail, although unwarranted, were not prejudicial. Defendant admitted that he shot the victim during a struggle. Moreover, the trial court immediately instructed the jury to disregard the statements, and also gave final instructions to disregard any stricken answers and to make its determinations based solely on admissible evidence. Because jurors are presumed to follow their instructions and the trial court's instructions to the jury are presumed to cure most errors, *Mullins*, 322 Mich App at 173, we conclude that a new trial is not warranted.

Defendant also argues that he was denied a fair trial because one witness was left on the witness stand in the presence of the jury while the trial court, the prosecution, and defense counsel had a brief conference in the hallway. However, there was no indication in the record that during this time the witness made any statements to the jury. We therefore conclude that the act of leaving the witness on the stand during a conference in the hallway did not prejudice defendant.

Defendant also argues that he was denied the effective assistance of counsel because his attorney failed to request that the trial court question the jury members about their ability to decide the case objectively after hearing the unsolicited statements. Defendant did not preserve this issue by requesting a new trial or a *Ginther*[1] hearing, however, and thus our review is limited to mistakes apparent on the record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To establish a claim of ineffective assistance of counsel, the defendant must demonstrate "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). Prejudice in this context means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*., quoting *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). We presume that defense counsel provided effective assistance, and the burden upon the defendant to prove that counsel was ineffective is a heavy one. *People v Schrauben*, 314 Mich App 181, 190; 886 NW2d 173 (2016). We also

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

presume that the challenged action or inaction by counsel might be considered sound trial strategy. *People v Leblanc*, 465 Mich 575, 578; 640 NW2d 246 (2002).

Here, counsel's decision not to ask the trial court to question the jury may have been a trial tactic to avoid bringing further attention to the statements, instead choosing to move past them and continue the cross-examinations. Moreover, there is no indication that a different result would have been reasonably probable had he done so, in light of the ample evidence establishing defendant's guilt. Thus, we conclude that defendant has not demonstrated that he was denied the effective assistance of counsel.

## B. DUTY TO RETREAT

Defendant next contends that the was denied a fair trial because the trial court refused to omit the portion of the jury instructions regarding a defendant's duty to retreat before using deadly force in self-defense. We disagree.

We review de novo claims of instructional error involving a question of law. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). We review a trial court's determination that a jury instruction applies to the facts of a case for an abuse of discretion. *Id*. An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of principled outcomes. *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014). The defendant bears the burden of proving that the alleged instructional error resulted in a miscarriage of justice. *Dupree*, 486 Mich at 702. We review jury instructions in their entirety to determine whether error warranting reversal occurred. *People v Chapo*, 283 Mich App 360, 373; 770 NW2d 68 (2009).

A criminal defendant is entitled to have the jury considering the evidence against him or her properly instructed. *People v Hawthorne*, 474 Mich 174, 182; 713 NW2d 724 (2006). A jury instruction must not exclude material issues, defenses, or theories if the evidence supports them. *People v Clark*, 274 Mich App 248, 255; 732 NW2d 605 (2007). In this case the trial court instructed the jury on self-defense and the potential duty to retreat, stating:

> If a defendant could have safely retreated but did not do so you may consider that fact in deciding whether or not the defendant honestly and reasonably believed he needed to use deadly force and self defense.
>
> However, a person is never required to retreat if he is attacked in his own home nor if the person reasonably believes that the attacker is about to use a deadly weapon nor if the person is subject to sudden fear and violent attacks.
>
> And further, a person is not required to retreat if the person has not or is not engaged in the commission of [a] crime at the time of the deadly force being used and has the legal right to be where the person is at the time and has an honest and reasonable belief that the use of the deadly force is necessary to prevent imminent death or great bodily harm of the person.

The trial court's instructions essentially mirrored M Crim JI 7.16. The prosecution disputed defendant's claims that he did not have a duty to retreat, and thus, as a matter of law, the first paragraph in M Crim JI 7.16 was not required to be omitted. Defendant argues that he did not

have a duty to retreat because he was in a place where he was legally allowed to be and the victim suddenly and violently attacked him. However, there was a factual dispute whether defendant was engaged in the commission of a crime at the time the shooting occurred because defendant admitted that he sold drugs from the house. Accordingly, the duty-to-retreat jury instruction was appropriate. Moreover, the jury instructions also described when defendant would not have had a duty to retreat based on defendant's assertions—i.e., if he reasonably believed that the victim was about to use a deadly weapon or he was subject to sudden fear and a violent attack. We therefore conclude that the instructions fairly presented the issues to be tried and sufficiently protected defendant's rights. *Chapo*, 283 Mich App at 373.

## C. REOPENING OF PROOFS

Defendant lastly contends that he was denied a fair trial because the trial court permitted the prosecution to reopen the proofs to permit an additional witness to testify. We review for an abuse of discretion the trial court's decision to grant a motion to reopen proofs. *People v Herndon*, 246 Mich App 371, 406; 633 NW2d 376 (2001). "Relevant in ruling on a motion to reopen proofs is whether any undue advantage would be taken by the moving party and whether there is any showing of surprise or prejudice to the nonmoving party." *Id*. (quotation marks and citation omitted).

Throughout the trial, the prosecution informed the trial court and defendant that the police were trying to locate a witness, who had appeared on the first day of trial but did not come back to court on the day that she was supposed to testify. On the sixth day of trial, after both parties had rested but before closing arguments, the witness appeared. The prosecution then moved to reopen proofs. In making its decision to allow the reopening of proofs, the trial court indicated that the jury had heard the witness's name mentioned throughout the trial, that the witness was an endorsed witness on the prosecution's witness list, that there was no showing of surprise or undue prejudice because the witness was endorsed and defendant and the trial court knew that the prosecution was looking for her, and that it was important not to leave a hole in the minds of the jury since her name had been mentioned throughout the trial.

We agree that there was no surprise to defendant in allowing the witness to testify because she was an endorsed witness, and the prosecution had updated the trial court and defendant throughout trial that it was searching for the witness in order to have her testify. Similarly, there was no undue prejudice or advantage in allowing the witness to testify; the witness was endorsed, discovery had been provided, and defendant was aware of her potential testimony. Thus, we conclude that the trial court did not abuse its discretion by reopening the proofs to permit the prosecution to present the witness's testimony, and in doing so did not deny defendant a fair trial.

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Michael F. Gadola