*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ADAM RYAN KING,

Defendant-Appellant.

UNPUBLISHED
August 19, 2021

No. 349601
Kalkaska Circuit Court
LC No. 18-004203-FC

Before: GADOLA, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

A jury convicted defendant of two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) and (2)(b) (sexual penetration of a person under 13 years of age by an individual 17 years of age or older), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and (2)(b) (sexual contact with a person under 13 years of age by an individual 17 years of age or older). Defendant was sentenced as an habitual offender, second offense, MCL 769.10, to consecutive prison terms of 25 to 50 years for the two convictions of CSC-I, to be served concurrently with prison terms of 125 to 270 months for each CSC-II conviction. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

Defendant's convictions arise from the sexual assault of his then eight-year-old daughter, VK. VK lived with her mother. According to VK's testimony at trial, defendant took her in his truck to a parking lot surrounded by trees behind a sledding hill known as Carly's Hill. After having VK remove her leggings and her underwear, defendant touched her at the bottom of her front private part, which she described as the part where she pees, with his finger and with his tongue. Defendant also put his finger and his tongue inside her front private part. Defendant put his finger inside her front private part at least two times. Defendant told VK not to tell anyone what happened or else he would go to jail. VK did not tell her mother about what had happened until her mother caught her looking at videos on the Internet of people doing the type of things that defendant did to her. The next day, February 3, 2018, VK's mother contacted the police, and Deputy Benjamin Hawkins learned about the allegations and advised VK's mother to schedule a

forensic interview for VK, which took place on February 8. On February 15, VK attended a medical evaluation conducted by Dr. Cynthia Smith on referral from Children's Protective Services. At trial, defendant denied abusing VK and claimed that her report of abuse was not reliable because a number of factors had tainted her memory, including exposure to others' stories of sexual abuse, viewing pornographic materials, being repeatedly interviewed, and being exposed to other children who were victims of sexual abuse. Dr. Smith testified as an expert witness on behalf of the prosecution, and Dr. Donald Thompson testified as an expert witness on behalf of the defense. Additionally, defense counsel presented the testimony of his girlfriend, as well as the testimony of two law enforcement officers who were investigating CSC complaints involving people that VK knew.

The jury convicted defendant of two counts of CSC-I and two counts of CSC-II. The trial court directed a verdict and dismissed a count of aggravated indecent exposure because the prosecution did not present evidence that the allegations in support of the charge took place at Carly's Hill.[1] Defendant moved for an evidentiary hearing regarding ineffective assistance of counsel, claiming that his counsel failed to accurately advise him of the consequences of rejecting a plea offer and that he was entitled to specific performance of the plea offer. Following the hearing, the trial court denied the motion.

## II. MEDICAL TREATMENT TESTIMONY

Defendant argues that the trial court abused its discretion when it found that VK's statements to Dr. Smith about the identity of the person who assaulted her and about what he did to her were admissible under MRE 803(4). We disagree.

"The decision whether to admit evidence is within a trial court's discretion. This Court reverses it only where there has been an abuse of discretion." *People v Katt*, 468 Mich 272, 278; 662 NW2d 12 (2003). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018). Preliminary questions of law, including whether a rule of evidence precludes the admission of evidence, are reviewed de novo. *People v Wilder*, 502 Mich 57, 62; 917 NW2d 276 (2018). "A trial court also necessarily abuses its discretion when it makes an error of law." *People v Al-Shara*, 311 Mich App 560, 566-567; 876 NW2d 826 (2015).

MRE 801 defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible unless it falls within an exception. MRE 802. One such exception is MRE 803(4), which applies to "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external

---

[1] Because the prosecutor failed to file a notice of intent to introduce other-acts evidence under MRE 404(b), the court limited the testimony in this case to acts that took place on one occasion at Carly's Hill. The court's decision to so limit the testimony is not directly at issue on appeal except to the extent that it tangentially relates to defendant's argument, *infra*, that improper other-acts evidence was presented.

source thereof insofar as reasonably necessary to such diagnosis and treatment." These statements are " 'admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care.' " *People v Shaw*, 315 Mich App 668, 674; 892 NW2d 15 (2016), quoting *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011). "[P]articularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *Shaw*, 315 Mich App at 674-675 (quotation marks and citation omitted). A child's statements are admissible under MRE 803(4) "when the totality of circumstances surrounding the statements supports that they are trustworthy." *People v Duenaz*, 306 Mich App 85, 95; 854 NW2d 531 (2014). To determine whether a child's statements to a medical professional are trustworthy, this Court reviews those statements in light of the following factors:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*People v Meeboer (After Remand)*, 439 Mich 310, 324-325; 484 NW2d 621 (1992) (citations omitted).]

"[E]vidence that the person identified as the assailant had the opportunity to commit the assault" can also "support the trustworthiness of the child's statements regarding a sexual assault and aid in the determination whether the statement was made for the purpose of receiving medical care." *Meeboer*, 439 Mich at 326. The Court also clarified that in cases of suspected or alleged child abuse, a trial court should consider the totality of the circumstances to determine the trustworthiness of a child's statement and whether the child understood the importance of telling the treating physician the truth. *Id*. at 325-326.

Regarding the reasonable necessity of the statements, information regarding the declarant's physical and psychological injuries can be reasonably necessary for medical diagnosis and treatment of the declarant's trauma. *Meeboer*, 439 Mich at 328-329. Medical diagnosis and treatment of a victim involve treatment of the victim's medical, physical, developmental, and psychological well-being. *Id*. at 329. Questions and discussion regarding the identity of the perpetrator may be reasonably necessary as it relates to the diagnosis and treatment of diseases, pregnancy, and the psychological impact of the abuse. *Id*. at 328-329. Disclosing the identity of the perpetrator itself can be a portion of the injury that a victim experiences from a sexual assault. *Id*. at 329.

In this case, VK's statements were admissible under MRE 803(4). VK was eight years old at the time of the medical evaluation. She demonstrated maturity when she described to Dr. Smith what occurred. The record indicates that Smith did not use leading questions to elicit statements from VK. Smith asked direct questions in response to VK's statements to understand the extent of the acts that occurred, and to understand how VK might have been injured. VK used childlike terms including calling her genitals her "girl parts," calling a male's genitals "boy parts," calling breasts "boobs," and calling buttocks "a butt." She pointed to her crotch to show what she meant by "girl parts." VK pointed to the applicable genital area when Smith asked her direct questions. The record indicates that VK used age-appropriate terminology.

Although CPS recommended that VK participate in the medical evaluation, VK's mother brought VK to the hospital for the examination. The purpose of the examination was not related to preparation for trial because the examination occurred within four to five weeks of the assault and approximately 16 months before trial. Dr. Smith performed the examination in a hospital and not for psychological treatment. VK did not mistake defendant's identity because defendant is her father. No evidence establishes that VK had a motive to fabricate sexual abuse allegations. See *People v Duenaz*, 306 Mich App 85, 96; 854 NW2d 521 (2014). In relation to diagnosis and treatment, Dr. Smith testified that she performed swab tests for sexually transmitted disease infection because VK had indicated that her genitals had been penetrated, which supports a finding that VK's statements were made for the purpose of receiving medical treatment. See *Meeboer*, 439 Mich at 325-326.

With respect to the reasonable necessity of the statement to the diagnosis and treatment of VK, VK's statements regarding defendant's acts were reasonably necessary so that Dr. Smith could examine and treat the areas of VK's body that could be injured and required medical treatment. See *Meeboer*, 439 Mich at 335-336. Although VK did not report any present indications of pain or injury, in cases of sexual assault injuries may be latent. See *Mahone*, 204 Mich App at 208. Dr. Smith's questions and VK's responses were reasonably necessary for Dr. Smith to diagnose and treat VK and were not for investigatory purposes. Therefore, we conclude that VK's statements to Dr. Smith were reasonably necessary for medical diagnosis and treatment and that the statements were admissible under MRE 803(4). See *Meeboer*, 439 Mich at 322.

Relatedly, defendant argues that the trial court abused its discretion by allowing Dr. Smith to testify, over defendant's objection, about VK's statements regarding acts that might not have taken place at Carly's Hill. The trial court had previously ruled, in response to an objection by defense counsel, that acts occurring at locations other than Carly's Hill were not admissible because the prosecution did not file notice of its intent to introduce other-acts evidence under MRE 404(b). The trial court had instructed VK to testify only about acts that occurred at Carly's Hill, and instructed the jury that the charges in this case related only to acts that occurred on one occasion at Carly's Hill.

The trial court was clearly aware from Dr. Smith's testimony during an offer of proof that even though her report stated that VK said that she was abused at three different locations, the location of the acts described by VK was not relevant to Dr. Smith's medical evaluation and she did not know where each of the acts described by VK occurred. Nonetheless, the court told Dr. Smith that she could only testify about acts that occurred at Carly's Hill. The court said:

[S]o its clear, the only thing you can talk about in terms of location is the allegations related to Carly's Hill. So, for example, I want to use an extreme example, the prosecutor says where did Vanessa say it happened? The only response that you can possibly give is that it happened in the area of Carly's Hill. So . . . don't answer it if you're not comfortable answering it, or limit your response to Carly's Hill because that's what I've previously ruled. So you can either say I can't answer the question and that's fine, or you can say whatever you're going to say, but you can't talk about his disclosure which allegedly involved other locations.

Dr. Smith responded, "Okay. I don't know how to answer that, but okay." The court said, "Well, I'm telling you that's the order."

Some of Dr. Smith's testimony about VK's statements corroborated VK's testimony about acts that occurred at Carly's Hill. However, Dr. Smith's testimony that VK said that defendant touched her boobs with his penis and ejaculated on her chest, and that he touched her butt, was the only evidence presented that defendant touched VK's breasts and buttocks. On this record, we cannot determine whether this testimony involved acts that occurred at Carly's Hill and, therefore, we cannot determine if the testimony was inadmissible under the court's ruling that precluded the admission of other-acts evidence. We conclude, nonetheless, that even if the testimony was wrongfully admitted, the error was harmless.

"If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Jackson*, 498 Mich 246, 257; 869 NW2d 253 (2015) (quotation marks and citation omitted). Defendant argues that the error was not harmless because the jury was not instructed on the proper use of other-acts evidence and may have used the other acts as substantive evidence to convict defendant of one or both of the charged counts of CSC-II.

CSC-II "requires the prosecutor to prove 'sexual contact.' " *People v Lemons*, 454 Mich 234, 253; 562 NW2d 447 (1997), quoting MCL 750.520c(1). "The statute defines sexual contact . . . as touching that can reasonably be construed as being for the purpose of sexual arousal or gratification." *Id*. (quotation marks and citation omitted). See MCL 750.520a(q). It can also include touching the clothing covering the victim's intimate areas. See MCL 750.520a(q). Defendant does not challenge the requirement that the touching be for the purpose of sexual arousal or gratification. The question is whether there was evidence apart from Dr. Smith's testimony from which the jury could find that defendant touched VK for purposes of the two acts of CSC-II.[2] VK initially testified that defendant touched her outside of her front private part, but when she was again asked the same question after an overruled objection, VK said that she did not remember. VK said that defendant touched her private parts. VK also said that defendant licked her private parts. While cunnilingus is statutorily defined as penetration, MCL 750.520a(r), one has to touch in order to penetrate. VK's testimony was sufficient to allow the jury to find beyond a reasonable doubt that she described acts of touch that were separate and distinct from the acts of digital

---

[2] The two counts of CSC-I involved digital penetration, and VK's testimony established only two counts of digital penetration. These acts will not be considered.

penetration underlying the CSC-I charges. Under these circumstances, it cannot be concluded that Dr. Smith's testimony, even if it included VK's statements about acts that might not have occurred at Carly's Hill, undermined the reliability of the verdict or affected the outcome of the trial with respect to the CSC-II convictions. See *Jackson*, 498 Mich at 257. And, because VK's testimony was sufficient to allow a rational jury to find beyond a reasonable doubt that defendant touched VK twice at Carly's Hill, the trial court properly denied defendant's motion for a directed verdict with respect to the two counts of CSC-II. See *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2016) (stating that this Court reviews the evidence presented up to the time of the motion in the light most favorable to the prosecution to determine whether the trier of fact could have found the essential elements of the crime were proven beyond a reasonable doubt).

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel by his trial counsel's deficient performance on three occasions. Defendant preserved his claim that counsel failed to properly advise him of a possible sentence when exercising his right to trial by raising it in a motion for a *Ginther*[3] hearing in the trial court. Defendant did not raise the other claims of ineffective counsel in the trial court. Therefore, review of those claims is limited to errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). To establish ineffective assistance of counsel, a defendant must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. A defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Trakhtenberg*, 493 Mich at 52. "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant first argues that trial counsel was ineffective by failing to tell him that if he proceeded to trial and was convicted of two counts of CSC-I the trial court had discretion to impose consecutive sentences, thereby depriving him of the opportunity to fully evaluate the benefit of the plea offer.[4] A defense counsel's failure to accurately advise a defendant of the consequences of rejecting a plea offer may constitute deficient performance. *People v Douglas*, 496 Mich 557,

---

[3] *People v Ginther*, 390 Mich 426; 212 NW2d 922 (1973).

[4] The felony information charging defendant with two counts of CSC-I states with respect to each count of CSC-I that the offense is a felony subject to a sentence of "Life or any term of years; mandatory minimum of 25 years . . . . The Court may impose a consecutive sentence under MCL 750.520b(3)."

591-592; 852 NW2d 587 (2014). A defendant may be prejudiced by trial counsel's failure to advise him of a possible sentence when exercising his right to trial. *Lafler v Cooper*, 566 US 156, 166; 132 S Ct 1376; 182 L Ed 2d. 398 (2012). If a defendant was in fact not advised of the consequences of rejecting a plea offer, he may establish prejudice by showing that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea." *Id*. at 174.

The plea offer included a plea to one count of third-degree CSC with no sentence agreement, together with an assurance that Grand Traverse County would not pursue charges with respect to CSC allegations under investigation in that county. Trial counsel advised defendant of his belief that the court would likely sentence him to a prison term of five to eight years. During a *Ginther* hearing, defendant testified that he was not advised that a conviction of CSC-I carried a mandatory minimum sentence of 25 years, nor was he advised that the sentences for two convictions of CSC-I could be ordered to be served consecutively. Defendant sought specific performance of the plea offer. Trial counsel testified that he met with defendant numerous times and that defendant was aware that a conviction of CSC-I had a mandatory minimum sentence of 25 years. Counsel could not recall whether he specifically used the words "50 years" or "consecutive," but that he explained to defendant that he risked going to prison for the rest of his life if he was convicted of both counts of CSC-I. Counsel said that he repeatedly told defendant that his many motions for bond were being denied because he was facing life in prison. Counsel said that he had conversations with defendant that "50 years from now, asking him his age and referencing my own age, how old we could be, and that would be—pretty much the rest of your life." The trial court deemed defendant's testimony not credible and self-serving. The court found that trial counsel's testimony was clear that he repeatedly discussed with defendant that he was facing life in prison if convicted of two counts of CSC-I.

The presumption of defense counsel's competence has not been overcome. To the extent defendant's testimony conflicted with trial counsel's testimony at the *Ginther* hearing, this Court defers to the trial court's finding that trial counsel was more credible. *Johnson*, 502 Mich at 565. The record shows that trial counsel reasonably and accurately advised defendant about mandatory minimum sentences. The trial court did not clearly err by accepting trial counsel's testimony that he advised defendant that he could face life in prison if he went to trial.

Next, defendant argues that trial counsel was ineffective by failing to renew the objection to Dr. Smith's testimony regarding VK's statements about acts that did not occur at Carly's Hill. However, defense counsel vigorously objected to Dr. Smith's testimony regarding VK's statements about acts that took place at locations other than Carly's Hill. Another objection immediately following the court's ruling would have been futile. Failing to raise a futile objection does not constitute ineffective assistance of counsel. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

Lastly, defendant argues that trial counsel was ineffective by failing to request jury instructions regarding the proper use of other-acts evidence and that the jury was not instructed that it could not use evidence of other acts to support a conviction on the CSC-II charges. Defendant does not cite any authority in support of his argument, nor does he discuss the particular instructions, M Crim JI 4.11 and 20.28a, that he contends trial counsel should have requested. We

-7-

consider this issue abandoned. *People v Konopka (On Remand)*, 309 Mich App 345, 366; 869 NW2d 651 (2015).

## IV. PROSECUTORIAL MISCONDUCT

Defendant argues that he was denied a fair trial by two instances of prosecutorial misconduct. To preserve a claim of prosecutorial misconduct, there must be a contemporaneous objection and a request for a curative instruction. *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). Defendant objected to both instances of alleged misconduct at trial, but those objections did not state arguments regarding the issues now raised on appeal. Because "an objection on one ground is insufficient to preserve an appellate argument based on a different ground," defendant's claims of prosecutorial misconduct are unpreserved. *People v Danto*, 294 Mich App 596, 605, 822 NW2d 600 (2011).

Generally, this Court reviews de novo issues of prosecutorial misconduct to determine whether the defendant was denied a fair and impartial trial. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). However, when prosecutorial statements are not preserved, we review the issue for plain error affecting the defendant's substantial rights. *Solloway*, 316 Mich App at 201-202. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To show that a defendant's substantial rights were affected, there must be "a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; alteration in original).

Defendant first asserts that the prosecutor's statement during closing arguments that Dr. Smith testified that VK had told her that defendant had made her touch his penis and rub it and that the rubbing continued until he ejaculated presented other-acts evidence as substantive evidence of guilt rather than as other-acts evidence. Assuming that Dr. Smith's testimony constituted evidence of other acts, defendant has not demonstrated plain error affecting his substantial rights. See *Carines*, 460 Mich at 763. Although Dr. Smith did not specifically testify that VK stated that she rubbed defendant's penis until he ejaculated, she testified that VK "described putting lotion on defendant's boy part and clear stuff coming out of his boy part, followed by white stuff coming out of his boy part." The prosecutor's statement that VK rubbed defendant's penis until he ejaculated was a reasonable inference based on the evidence. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). And, as previously discussed, VK's testimony alone was sufficient to support the element of touch for purposes of the CSC-II convictions.

Next, defendant argues that the prosecutor argued facts not in evidence when he said that VK's mother testified that VK displayed symptoms of sexual abuse. Prosecutors are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their

theory of the case. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). However, "[a] prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Id*. at 241. The prosecution did not present evidence regarding typical symptoms of child sexual abuse for the purpose of explaining VK's specific behavior. The prosecutor's statement that VK's mother's testimony showed that VK displayed symptoms of sexual abuse was not based on testimony entered into evidence and was not a reasonable inference from that testimony.

Errors are considered harmless when it is "highly probable that the errors did not contribute to the verdict." *People v Mitchell*, 231 Mich App 335, 339; 586 NW2d 119 (1998). Defendant's defense rested on whether the jury believed his contention that he did not commit the acts alleged and that VK's report that she was sexually assaulted was not reliable because her memory was tainted by source misattribution errors. Under these circumstances, and considering VK's testimony, the error did not likely contribute to the verdict.

Affirmed.


/s/ Michael F. Gadola
/s/ David H. Sawyer
/s/ Michael J. Riordan