*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRENT OHMILL BROWN, JR.,

        Defendant-Appellant.

UNPUBLISHED
June 16, 2022

No. 355208
Kent Circuit Court
LC No. 19-007686-FC

Before: RONAYNE KRAUSE, P.J., and M. J. KELLY and YATES, JJ.

PER CURIAM.

Defendant, Brent Brown, Jr., appeals as of right his convictions following a jury trial of assault with intent to murder, MCL 750.83; intentional discharge of a firearm from a vehicle, MCL 750.234a; felon in possession of a firearm, MCL 750.224f; and three counts of carrying a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b. The trial court sentenced Brown as a fourth-offense habitual offender, MCL 769.12, to serve 840 months to 125 years' imprisonment for the assault with intent to murder conviction; 152 months to 70 years' imprisonment for the discharge of a firearm from a vehicle conviction; 76 months to 70 years' imprisonment for the felon in possession of a firearm conviction, and 5 years' imprisonment for each count of felony-firearm, to be served consecutively to, and preceding, the other felony sentences. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

Javon Holloway was shot dead on June 4, 2019, after Brown instigated a shootout outside a home on Temple Street. Prior to the shootout, Holloway was sitting outside the home with some of his friends and family. Several witnesses saw Brown drive down the street and fire multiple gunshots out of the window of his vehicle. Brown exited his vehicle in a church parking lot and continued to fire his gun toward Holloway. Holloway and his cousin returned fire from the front yard of the Temple Street home. During the exchange of gunfire Holloway was struck in the head. At trial, it was suggested that Holloway's cousin was the one who fired the fatal shot. During a police interview, Brown admitted that he fired a gun, but stated that had been acting in self-defense.

## II. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Brown first argues that his lawyer provided ineffective assistance by failing to object to the admission of Facebook messages and to testimony from Holloway's mother and aunt. Because an evidentiary hearing has not been conducted, our review of Brown's claim of ineffective assistance is limited to mistakes that are apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864 (2012).

### B. ANALYSIS

To prevail on a claim of ineffective assistance, a defendant must demonstrate that (1) his lawyer's representation fell below "an objective standard of reasonableness under prevailing professional norms," and (2) there is a reasonable probability that, but for his lawyer's unprofessional errors, the result of the trial would have been different. *Id*. (quotation marks and citation omitted). In doing so, the defendant must overcome the strong presumption that his lawyer's assistance was effective. *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004). See also *Gioglio*, 296 Mich App at 22 (recognizing that there are "countless ways to provide effective assistance in any given case."). Further, "[t]he defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020).

### 1. FACEBOOK MESSAGES

Brown first argues that his lawyer's assistance was ineffective because he did not object to the admission of Facebook messages. He argues that the messages were irrelevant, were inadmissible under MRE 403, and that they violate the best-evidence rule. We address each contention in turn.

Evidence is relevant if it has "any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Here, Holloway's mother testified that the messages were exchanged between Brown and Holloway in 2017, and she specifically identified which statements were made by Brown and which were purportedly made by Holloway.[1] The messages on the first page of the printout appear to be from November 11, 2011. The messages provide:

> [*Holloway*.] Why cant we all get alone [sic]

---

[1] Brown has not argued on appeal that he did not write the messages attributed to him. Instead, he has only asserted that the messages may have been directed to Holloway's brother, not Holloway. For ease of reference, we will use the testimony of Holloway's mother to refer to the purported author of each message.

8:35 PM

*Brown*.  Fuck outta here ion got nun against you but I'm not fwy goof ass

[*Holloway*.]  [Five laughing emojis] why not damn

*Brown*.  U on some weird ass shit nigga we been not cooling

At the bottom of the screenshot on the first page is the following partial message: "Tell your brother yall gotta move out hood by next [. . . .]"  Holloway's mother clarified that Brown gave Holloway and his brother a one-month deadline to leave the neighborhood, but that they did not do so.

The second page of the printout includes the following series of messages:

[*Brown*.]  . . . with u james[2]

[*Holloway*.]  Wym nigga we ain't going no where wft y'all beefing for?

[*Brown*.]  I told yall what it is its yall choice not to listen

[*Holloway*.]  Nigga we are not hiding mf don't come around on no bs [100 emoji]

[*Brown*.]  I don't want nobody to hide want niggas to line up abd catch a couple of these bitches

The third page of the printout sets forth a message exchange that occurred on November 25, 2017 at 11:09 a.m.:

[*Holloway*.]  Look I overheard you talking to my neph my daughter and my daddy in that house idk the issue but solve it without the threats cause it can get deeper than y'all quick.  Happy Holidays lil nigga chill out and enjoy it with ya seed

[*Brown*.]  Is he gonna see his ever meet his seed nope

[*Holloway*.]  That's all I needed you to say, you be smooth and I see you like running you mouth [indecipherable]

---

[2] Brown argues that this reference to James allows for an inference that the messages were to Holloway's brother.  Viewed in context, however, it is clear that this is only the end of a message. It is equally likely that Brown was merely referring to Holloway's brother in a message he sent to Holloway as it is that he was directing the message to Holloway's brother.

Taken as a whole, the Facebook messages are relevant to a fact of consequence: Brown's motive for instigating a shootout. They allow for an inference that Brown and Holloway were "beefing," that Holloway wanted to "get along" but Brown did not want to, and that Brown was making threats toward Holloway. Those threats included what appears to be a deadline for Holloway and Holloway's brother to leave the neighborhood, an indication that Brown wanted Holloway to "line up" rather than hide, and a reference to Holloway never meeting his "seed," which is presumably a reference to Holloway's children. Because each inference goes toward Brown's motive, the messages were relevant. Brown's lawyer did not render constitutionally deficient assistance by failing to object on the basis that the messages were irrelevant.

Brown next argues that even if the messages were relevant, his lawyer should have objected under MRE 403. Under MRE 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Evidence is not unfairly prejudicial simply because it is "damaging." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod by 450 Mich 1212 (1995). "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury." *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).

Brown argues that the messages were unfairly prejudicial because they were sent in 2017, which was over a year before the shootout. He also directs this Court to Holloway's mother's testimony that Brown attempted to make amends with Holloway after the Facebook messages were sent. Lastly, he asserts that the messages were so unclear that Holloway's mother had to offer an interpretation of them. However, the prejudicial effect of the evidence was decreased, not increased, by the very facts that Brown directs this Court to on appeal. Moreover, the probative value of the evidence was not marginal. It was, instead, highly probative of Brown's intent on the day of the shootout because it allowed the jury to infer that Brown has an antagonistic relationship with Holloway and that he had previously threatened him. Because the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, Brown's lawyer was not ineffective for failing to object to its admission under MRE 403.

Brown finally argues that the Facebook messages were inadmissible because they were not properly "authenticated." In doing so, he does not argue that there was a lack of authentication under MRE 901. Rather, he relies on the best evidence rule, MRE 1002, to argue that there is nothing to show that the contents of the writing were accurately reflected. MRE 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." The Facebook messages are a "writing." See MRE 1001(1). On appeal, Brown asserts that the messages are also an "original writing" because they are a printout of computer data that is readable by sight, so the messages must reflect the data accurately.

However, the word "original" is defined by MRE 1001(3), which provides in relevant part:

An 'original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. . . . If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.'

Here, although the Facebook messages were likely accessed from a computer or similar device, they were not, in fact, stored on that device. Instead, the screenshot of the messages had to have first been saved from the Internet to a computer or similar device and then provided to the prosecution by Holloway's mother. As a result, the messages are clearly a duplicate. See MRE 1001(4). Under MRE 1003 "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

Brown contends that there was "no authentication from Facebook" or explanation as to "where and how" Holloway's mother "came to obtain these messages." Brown's preference that the data be authenticated by Facebook or that an explanation be given for how Holloway obtained the messages, however, does not create a genuine issue as to the authenticity of the Facebook messages. Indeed, the prime requirement for authenticity is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." See MRE 901(a). Brown has not argued that MRE 901(a) was not satisfied. Therefore, Brown has not shown that an objection on the basis that the Facebook messages were not the best evidence would have been successful. Accordingly, he cannot meet his burden of showing that his lawyer's failure to object constituted deficient performance.

Regardless, even if Brown's lawyer's performance was deficient, Brown cannot show that, but for his lawyer's unprofessional errors, the result of the trial would have been different. Again, the messages plainly reflect that Brown was "beefing" with Holloway and that he rejected Holloway's request to "get alon[g]." Further, the messages attributed to Brown demand that Holloway and his family move and, taken as a whole, they allow for an inference that Brown threatened harm to Holloway and his family. Those implications were cumulative to evidence that has not been challenged by Brown. Multiple witnesses testified as to the conflict, arising in 2017, between Brown and Holloway. Additionally, Holloway's mother testified that, contrary to Brown's warning that they should move, she and her family stayed in the area. She recounted that on two occasions between 2017 and when Holloway was shot someone drove by their house and fired shots at it. On one of those occasions, Brown was identified to be the person who had fired the shots. Moreover, even in the absence of evidence that Brown had made prior threats toward Holloway, multiple witnesses identified Brown as the individual who instigated the shootout while Holloway and others were in front of a home on Temple Street. Brown's conviction rested on the credibility determination the jury made regarding the eyewitnesses and not from the jury learning of implied threats communicated to Holloway by Brown in 2017. Therefore, Brown cannot sustain his burden of providing that, but for his lawyer's alleged error, the outcome of the proceedings would have been different.

## 2. OTHER TESTIMONY

Brown next argues that his lawyer's performance was ineffective because he did not object to testimony by Holloway's mother and his aunt. He contends that certain testimony was irrelevant or, alternatively, was inadmissible under MRE 403.

First, Holloway's mother testified that the Facebook messages were exchanged between Brown and Holloway. Brown does not explain why this testimony was either irrelevant or inadmissible under MRE 403. "An appellant may not merely announce his position and leave it

to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). This challenge to Holloway's mother's testimony, therefore, is abandoned.

Brown also directs this Court to testimony from Holloway's mother that after the Facebook messages were sent in November 2017, someone fired shots at her home in January 2018 and March 2018. She testified that after the March 2018 shooting, Holloway went outside and when he came back he told her that Brown had been the shooter. On appeal, Brown proclaims that this was hearsay. He does not, however, argue that it was *inadmissible* hearsay, nor does he provide any further analysis as to what basis his lawyer would have had to object. His hearsay challenge is, therefore, abandoned on appeal. *Id*. Moreover, although he also indicates that this testimony was irrelevant and inadmissible under MRE 403, he again does not offer any analysis in support of that assertion. Consequently, that challenge has also been abandoned. *Id*.

Next, Holloway's mother testified that, based on her knowledge, it was Brown's "standard to carry a gun." Brown does not explain on appeal why this testimony was irrelevant, nor does he offer any analysis as to why its probative value was substantially outweighed by the danger of unfair prejudice. He only notes that his trial lawyer did not object to it. In light of this perfunctory argument, we conclude that this challenge has also been abandoned. *Id*.

Brown also makes a cursory reference to the fact that Holloway's aunt testified that her family members had "indicated to her" that Brown had shot up a family member's house before. However, other than identifying that no objection was made to this testimony, he does not proffer any analysis as to why this evidence was irrelevant or inadmissible under MRE 403, nor does he argue that his lawyer provided ineffective assistance by failing to object to it. Accordingly, any challenge to the aunt's testimony has been abandoned. *Id*.

Finally, Holloway's mother also attributed the message "I don't want nobody to hide want niggas to line up abd catch a couple of these bitches" to Brown. In doing so, she speculated that Brown "was talking about shooting" in the message and that Brown "wanted somebody to die." We conclude that there was no basis upon which to admit her speculative interpretation of what Brown purportedly wrote. On appeal, the prosecution argues that if there had been an objection, Holloway's mother might have been able to explain how the language in the message was slang for shooting someone and wanting someone to die; however, it is equally likely that she would have been unable to do so. Indeed, given that her interpretation was mere speculation, the evidence has no legitimate probative value, but was highly prejudicial because it indicated that Brown wanted to shoot somebody dead. It should have been excluded under MRE 403, and we can discern no strategic reason for the failure of Brown's lawyer to object.

Nonetheless, Brown has not showed that, but for his lawyer's failure to object to this interpretation of the Facebook messages, the outcome of the trial would have been different. Indeed, even without Holloway's mother's speculative testimony, the Facebook messages allowed for an inference that Brown threatened Holloway with harm in 2017. Thereafter, in June 2019, several eyewitnesses identified that Brown drove to Temple Street and initiated a shootout with Holloway. On this record, Brown cannot show that the speculative interpretation of Brown's words by Holloway's mother prejudiced him.

III. PROSECUTORIAL MISCONDUCT

A. STANDARD OF REVIEW

Brown next argues that he is entitled to a new trial on the basis of prosecutorial misconduct. Because Brown did not object to the identified statements at trial, or request a curative instruction, this issue is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). When a claim of prosecutorial misconduct is unpreserved, this Court's review is for plain error affecting substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). To avoid forfeiture under the plain-error rule, three requirements must be met: (1) error must have occurred, (2) the error was plain, and (3) the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

B. ANALYSIS

Claims of prosecutorial misconduct are reviewed on a case-by-case basis. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). When a claim of prosecutorial misconduct is based on a prosecutor's statements, those statements must be analyzed in context to determine if the defendant was denied a fair trial. *Id*. The prosecutor's statements must be analyzed in light of the defense arguments and the relationship between the prosecutor's comments and the evidence admitted at trial. *Id*. In closing argument, prosecutors are generally given great latitude and are free to argue the evidence and all reasonable inferences from the evidence. *Id*. However, a prosecutor is not free to misstate the law, *People v Abraham*, 256 Mich App 265, 275-276; 662 NW2d 836 (2003), nor may a prosecutor misstate the facts, *People v Stanaway*, 446 Mich 643, 868; 521 NW2d 557 (1994).

Brown argues that the prosecutor committed misconduct by twice misstating the law of self-defense. First, during his cross examination of Holloway's cousin, Brown's lawyer asked if Holloway's cousin had been given immunity. The prosecutor objected, stating that Brown's lawyer "knows the exact reason we did not charge, which is we can't charge someone from defending themselves in their own home." Second, during his closing argument, the prosecutor hypothetically asked, "why aren't [Holloway and his cousin] in trouble," and then answered:

> They don't have an obligation. It's their family's home. They don't have an
> obligation. And when you're subject to a violent, fierce, and sudden attack, you
> have no obligation to leave that neighborhood—or leave that scene. You have the
> right to stand your ground and defend yourself, and that's exactly what [Holloway's
> cousin] was doing, and its exactly what Javon Holloway was doing.

The prosecutor did not misstate the law of self-defense. See *People v Conyer*, 281 Mich App 526, 530 n 2; 762 NW2d 198 (2008) (stating that there is generally a common-law duty to retreat "unless attacked inside one's own home, or subjected to a sudden, fierce, and violent attack

-7-

. . . .").[3]  Instead, the prosecutor's error was in suggesting that Holloway's cousin had no duty to retreat because he was defending his own home.  That suggestion was a misstatement of the facts because Holloway's cousin testified that he had traveled from his home  to the Temple Street home prior to the shootout.[4]

Although Brown contends that the prosecutor's repeated statements "valorized" Holloway's cousin and that they created "incurable prejudice," we do not find the misstatement so impactful.  The prosecutor's misstatement was relatively minor given that, despite Holloway's cousin not being at his own home, he was nevertheless not under an obligation to retreat given that he was subjected to a sudden, fierce, and violent attack.  Thus, although the prosecutor's statement was incorrect, the primary basis for the argument—that Holloway's cousin had no duty to retreat— was correct.  Moreover, the jury was properly instructed that they had to base their findings on the evidence and that the arguments by the lawyers do not constitute evidence.  "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors."  *Abraham*, 256 Mich App at 279.  Consequently, given the relatively minor factual misstatement, we find no reason for reversal in this case.  See also *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014) ("We will not find error requiring reversal if a curative instruction could have alleviated the effect of the prosecutor's misconduct.").

## IV. SENTENCING

### A.  STANDARD OF REVIEW

Brown argues that he is entitled to resentencing because the trial court did not consider mitigating factors and his sentence is disproportionate.  This Court reviews de novo constitutional challenges to sentencing.  *People v Skinner*, 502 Mich 89, 99; 917 NW2d 292 (2018).  Whether a trial court imposed a sentence that was proportionate to the offender and offense is reviewed for an abuse of discretion.  *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).  He also argues that his lawyer provided ineffective assistance at sentencing; we review that challenge for errors apparent on the record.  *Gioglio*, 296 Mich App at 22.

---

[3] Because the prosecutor did not misstate the law of self-defense, we find no merit to Brown's contention that the prosecutor's argument "had the likely effect of confusing the jury on the issue of self-defense entirely."  Regardless, we note that the court properly instructed the jury on self-defense.  It is presumed that jurors follow the instructions given to them by the court.  *Abraham*, 256 Mich App at 279.

[4] Brown also suggests that the prosecutor's argument was improper because it was unclear whether the gun Holloway's cousin used in the shootout was lawfully possessed.  However, unlike the misstatement regarding where Holloway's cousin lived, the record does not clearly indicate that Holloway's cousin was unlawfully possessing a gun.  Regardless, the prosecutor was free to argue any reasonable inferences that arose from the evidence.  See *Mullins*, 322 Mich App at 172.

B. ANALYSIS

1. PROPORTIONALITY

Brown asserts that his sentence is disproportionate. In support, he argues that it was a mitigating factor that he was only 21 years of age at the time of sentencing. Michigan state courts are not required to review all mitigating factors in sentencing. *People v Osby*, 291 Mich App 412, 416; 804 NW2d 903 (2011). Moreover, Brown's sentence is within the guidelines range. A within-guidelines sentence is presumptively proportionate. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). Moreover, MCL 769.34(10) states: "If a minimum sentence is within the appropriate sentence guidelines range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in the scoring of the sentencing guidelines or inaccurate information relied upon in determining the sentence." Because Brown has not identified any error in the scoring of the sentencing guidelines or directed this Court to any inaccurate information relied upon by the trial court when determining his sentence, we must affirm his sentence.

Brown argues that MCL 769.34(10) was invalidated by decisions of our Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). However, this Court has repeatedly held that *Lockridge* did not alter or diminish the requirement of MCL 769.34(10). See e.g., *People v Schrauben*, 314 Mich App 181, 196, 196 n 1; 886 NW2d 173 (2016); *People v Anderson*, 322 Mich App 622, 635-637 n 1; 912 NW2d 607 (2018); and *People v Posey*, 334 Mich App 338, 357; 964 NW2d 862 (2020).[5] We are bound by those cases. MCR 7.215(J)(1), and we decline Brown's invitation to revisit the issue. On this record, Brown has not shown that his sentence was disproportionate or that the court erred by failing to consider his age as a mitigating factor.

2. INEFFECTIVE ASSISTANCE

Brown next argues that his lawyer provided ineffective assistance by failing to advocate for Brown at sentencing. We disagree. Brown's lawyer did, in fact, advocate for Brown at sentencing. He raised several challenges to the scoring of the offense variables. Thereafter, he made the following comments:

> We sat through a trial and the Court heard all the testimony and we know how this transpired. It's a sad event anytime a young person dies or—especially in the Black community. This happens all the time, all too often. And I'm saddened every time I see it happen. And I'm sad that this happened.

---

[5] A within-guidelines sentence can still be reviewed to determine if the sentence is so grossly disproportionate that it constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. *People v Posey*, 334 Mich App 338, 357; 964 NW2d 862 (2020). Brown, however, has not raised an Eighth Amendment challenge to his sentence.

I'm sad that the—the folks who came out and wanted to shoot back at Mr. Brown didn't think twice and just go in the house and hide under the bed. There's nothing wrong with doing that. Call the police. You know, and so, the fact that—that a young man died unnecessarily affects me, it affects our community, it affects all of us.

And Mr. Brown is—is going to stand here before you and say something, and then he's going to go off and—and serve probably the rest of his life in prison.

But I do want that message to be clear. That this violence in the Black community has got to stop. And it doesn't stop by running in the house, grabbing guns, and shooting at each other like we—like this is the Wild West. That's not the answer. Thank you.

Brown argues that rather than argue for a sentence at the bottom of the guidelines range, his lawyer instead made an argument against violence in the Black community. In context, however, it is clear that Brown's lawyer was arguing that the blame for Holloway's death was not solely Brown's fault. Rather than focus on Brown's role, he repeatedly references that Holloway and his cousin chose to shoot back at Brown rather than to go inside, hide, and call the police. His argument suggests that the court should empathize with Brown who will probably have to serve the rest of his life in prison because of the imprudent actions of Holloway and his cousin. Although he did not directly ask the trial court for a bottom-of-the-guidelines sentence, it is clear that he was, in fact, advocating in favor of Brown.

Regardless, Brown has not met his burden of showing that, but for his lawyer's allegedly improper argument, there is a reasonable probability that the outcome of his sentencing would have been different. His argument that Brown's young mind might have been affected by the trauma his lawyer described as prevalent in the area is not based on any record facts. And although he asserts on appeal that his age was a mitigating factor, the trial court was aware of his age, which was listed in the presentence investigative report. Further, the presentence investigative report, which was reviewed by the trial court, included a statement by Brown requesting that he be sentenced "at the low end of the guidelines" with his sentence to run "concurrent because [he] did not intend to harm anyone." Brown's lawyer was, therefore, not ineffective for failing to explicitly advocate for a lenient sentence.

## V. PLEA NEGOTIATIONS

Finally, in a supplemental brief submitted under Michigan Supreme Court Administrative Order 2004-06, Standard 4, Brown argues that his lawyer was ineffective because he misled Brown regarding a plea offer made by the prosecution.

"Defendants are entitled to the effective assistance of counsel when considering or negotiating a plea agreement." *People v While*, 331 Mich App 144, 148; 951 NW2d 106 (2020). "As with any other claim of ineffective assistance, the defendant has the burden of establishing the factual predicate of his ineffective assistance claim." *Id*. (quotation marks, citation, and alteration omitted). Brown stated in an affidavit submitted in support of his claim on appeal that a plea offer was placed on the record at his preliminary examination that would have resulted in a 7-year

sentence if he accepted. He asserts that his lawyer advised him to reject the plea offer because "we would come out better going to trial and trying it as a self defense case," so he rejected the offer. The record does not support his claim. Although the prosecutor made an offer on the record prior to the preliminary examination, he did not indicate that there was any sentence agreement.

Indeed, given that the agreement would have required Brown to plead to assault with intent to commit murder, for which the minimum guideline range was scored at 22 and a half to 75 years. He would have also had to plead to felony-firearm, second offense, which would have required that Brown serve a five-year sentence consecutive to the sentence for the assault with intent to murder conviction. Thus, Brown suggests that the prosecutor offered a 7-year sentence, 5 years of which would be for his felony-firearm conviction and 2 years of which would be for his assault with intent to murder conviction. Even if such an unlikely offer had been made, the trial court was under no obligation to accept it, and there is nothing on the record to support a finding that the court would have done so.[6] Because Brown cannot establish the factual predicate for his claim, i.e., that plea agreement that included a 7-year sentence agreement was proffered by the prosecution at his preliminary examination, he cannot prevail on this claim.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Michael J. Kelly
/s/ Christopher P. Yates

---

[6] Moreover, at a status conference on February 17, 2020, the prosecutor placed a plea offer on the record. At that time, the sentencing portion of the agreement was "approximately 30 [years] plus 5 [years for the felony-firearm charge]." The prosecutor noted that, if convicted, the minimum guidelines range would be 22 and a half years to 75 years for assault with intent to murder. The prosecutor added that, given that Brown had shot someone while on bond for shooting someone, he would pursue consecutive sentencing if Brown was convicted following a trial. We conclude that the prosecutor's comments at the status conference are further support for the conclusion that no 7-year sentencing agreement was contemplated by the prosecution in this case.