*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY MICHAEL FREY,

Defendant-Appellant.

UNPUBLISHED
December 28, 2023

No. 360810
Clinton Circuit Court
LC No. 2020-010685-FH

Before: BORRELLO, P.J., and SWARTZLE and PATEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of assault with a dangerous weapon (felonious assault), MCL 750.82; for which he was sentenced as a second-offense habitual offender, MCL 769.10, to 30 months' to 6 years' imprisonment. We affirm defendant's conviction and sentence.

## I. BACKGROUND

On May 27, 2020, at approximately 5:30 p.m., Erica Maupin pulled into a gas station in Eagle Township, Michigan. As Maupin was driving through the lot, she honked her horn several times to avoid a collision with defendant's vehicle as it backed out of a parking space. Maupin pulled around and parked her vehicle at a gas pump. Maupin and her passenger, Kim Faccio, both exited the vehicle to enter the convenience store. As Maupin walked towards the rear of her vehicle, defendant pulled his vehicle behind her vehicle and yelled at her through his open driver's side window. After a brief exchange, Maupin claimed that defendant appeared to reach for something, then raised a black pistol, racked it, and pointed it at her through the windshield of his vehicle. Maupin described hearing a sharp metal-on-metal sound that a firearm makes when a bullet is loaded into the chamber. Maupin stated, "It was a gun. It scared me. But it made me mad at the same time." Maupin explained that she was "caught up in just the adrenaline." She walked to the open door of her vehicle, threw her purse and cell phone into the vehicle, walked back to where she had been standing between two gas pumps near the rear of the vehicle, and told defendant to "use the gun" and shoot her. Defendant told her to "come closer" to him. As Maupin stood her ground, another vehicle pulled behind defendant's vehicle. The occupants of that vehicle

-1-

appeared to know defendant and exchanged words with him. Shortly thereafter, defendant backed his vehicle up and drove out of the lot. After defendant left, Maupin went inside the convenience store, told the employees what happened, and instructed them to call the police. Once her adrenaline subsided, Maupin became emotional, cried, and she experienced fear. She testified that the incident continues to impact her.

Faccio maintained that she also saw a firearm in defendant's hand. Based on the angle defendant was holding the gun, she saw the butt and tip of the firearm, which she described as dark in color. Faccio served in the army, is a former Michigan state trooper, and has extensive training in ammunition and weapons. Based on her training and experience, Faccio opined that the firearm was a semiautomatic. She observed the firearm's rail in the forward position, which indicated to her that there was a bullet in the chamber. Faccio further opined defendant had taken a stimulant based on his agitated and jittery behavior. Faccio described Maupin as "distraught" after the incident.

When defendant was interviewed by the police six weeks later, he stated he remembered being at the gas station and the confrontation. He admitted that he smoked marijuana before the incident, and declared he may have also inadvertently consumed Xanax, which affected his memories of that day. Defendant explained that he acted out of character when he was under the influence of drugs. When defendant was asked if he had a weapon while he was at the gas station, he responded that, to his knowledge, he did not have a gun. But defendant also stated if he did have a gun, it was not a real gun.

Defendant was charged with and tried on one count of possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f; one count of felonious assault; two counts of carrying or possessing a firearm when committing or attempting to commit a felony (felony-firearm), MCL 750.227b; and, one count of carrying a concealed weapon (CCW), MCL 750.227. At trial, the defense theory was that there was no evidence that defendant had a firearm at the time of the incident. The jury convicted defendant of felonious assault, but acquitted him of the other charges. Defendant was sentenced as already noted, with a minimum guideline sentencing range of 12 to 30 months' imprisonment. Defendant moved for a new trial or resentencing, which the trial court denied. This appeal followed.

## II. THE PROSECUTOR'S CLOSING ARGUMENT WAS NOT IMPROPER

Defendant contends he was denied a fair trial because the prosecutor argued facts not in evidence, encouraged the jury to convict him on the basis of physical characteristics, and inserted irrelevant and unfairly prejudicial evidence into trial. We disagree.

A prosecutor may not knowingly use false evidence to obtain a conviction and may not allow false testimony to go uncorrected. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). We review prosecutorial misconduct issues on a case-by-case basis. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). We review "the prosecutor's remarks in context to determine whether the defendant was denied a fair and impartial trial." *Id*. (cleaned up). "The prosecutor's statements are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id*. (cleaned up). "Generally, prosecutors are given great latitude regarding their arguments and are free to argue the evidence and all reasonable

inferences from the evidence as they relate to their theory of the case." *Id*. (cleaned up). "Further, [this Court] cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003). Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Challenges to a prosecutor's statement or conduct must be preserved by contemporaneous objections and requests for curative instructions. *People v Evans*, 335 Mich App 76, 88; 966NW2d 402 (2020). We review unpreserved challenges for plain error affecting defendant's substantial rights, *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*. "[O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

## A. STATEMENTS THAT THE FIREARM WAS LOADED

First, defendant contends that the prosecutor argued facts not in evidence when he stated four times during closing argument that defendant's firearm was loaded. Because the challenged statements were not preserved by contemporaneous objections and requests for curative instructions, *Evans*, 335 Mich at 88, our review is for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 762-763.

Contrary to defendant's assertions, the witness testimony supported a conclusion that defendant pointed a loaded firearm at Maupin. Maupin testified she heard a sharp metal-on-metal sound when defendant racked or cocked the firearm before pointing it at her. Faccio stated, in her experience with weapons, the slide of a semiautomatic firearm will stay back when it is unloaded. Faccio observed the slide was forward, inferring the chamber was loaded. The police chief confirmed Faccio's statement, but left open the possibility that a firearm might have an empty chamber with the slide forward. Even if there is disagreement or uncertainty in the evidence about whether the gun was loaded, the prosecutor is free to argue reasonable inferences arising from the evidence. *Mullins*, 322 Mich App at 172. We find that the prosecutor did not commit plain error. See *Carines*, 460 Mich at 763.

Moreover, the trial court instructed the jury that "[t]he lawyers' statements and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theories. You should only accept things the lawyers say that are supported by the evidence or by your own common sense and general knowledge." "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *Mullins*, 322 Mich App at 173.

## B. INFERENCES REGARDING DEFENDANT'S CHARACTER

Defendant next argues the prosecutor made improper argument and references regarding defendant's character. This argument also lacks merit.

Defendant cites to the following exchange during the prosecutor's rebuttal closing argument:

> [*The Prosecutor*]: Defense also points out or attempts to point out that the crying in the interview was kid in his 20s feeling sorry for himself, oh, oh it's too much. You've all looked at that Defendant. Look at that Defendant and tell me that's some innocent kid in his 20s.

> [*Defense Counsel*]: Objection Your Honor. I don't even know that Defendant, look at that Defendant what does that mean?

> *The Court*: Counsel?

> [*The Prosecutor*]: It's rebuttal Your Honor. The notion was that he's some poor kid in his 20s. I'm responding to that. They can see, the jury can see he's been identified in court.

> *The Court*: All right. You're walking a fine line there, Counsel.

> [*The Prosecutor*]: I'll move on, Your Honor.

Defendant asserts that this was improper argument that impliedly referred to defendant's physical appearance such as his race, hair, tattoos, piercings, and clothing. Defendant also argues that the prosecutor injected a "tough guy" issue in the trial and references several isolated comments made by the prosecutor during trial; however, defense counsel did not object to any of the isolated comments he references. We must review the prosecutor's remarks in context and in light of defense arguments. *Mullins*, 322 Mich App at 172. And because all but one of the challenged statements were not preserved by contemporaneous objections and requests for curative instructions, *Evans*, 335 Mich at 88, our review of the unpreserved statements is for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 762-763.

During trial, defense counsel asked the police chief about defendant's young age and his emotional demeanor during the police interview. The police chief testified that defendant broke down and cried during his interview. The prosecutor rebutted by asking the police chief if defendant had a gun with him at his interview, which he did not. The prosecutor asked: "Couldn't be a tough guy without a gun?" The police chief responded, "correct." Defense counsel did not object to the prosecutor's statement. During closing argument, defense counsel proposed to the jury there are many reasons, besides guilt, why defendant might have cried during his police interview. Defense counsel suggested defendant was young, could not remember details about the incident, and did not know why he was interviewed. The prosecutor responded to defense counsel's argument by directing the jury to look at defendant and determine if he is an innocent young man, as defense counsel had implied. In each instance, the prosecutor was responding to arguments raised by defense counsel and thus his statements did not amount to error. Further, the

-4-

trial court's instructions to the jury that the attorneys' arguments are not evidence is presumed to have cured any prejudice. *Mullins*, 322 Mich App at 173.

Defendant next argues the prosecutor made statements during closing argument about defendant being on methamphetamine, not to discuss his theory of the case, but to inflame the jury and attack defendant's character, resulting in an unfair trial. This argument lacks merit. First, because the challenged statements were not preserved by contemporaneous objections and requests for curative instructions *Evans*, 335 Mich at 88, our review is for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 762-763. Even if there is disagreement or uncertainty in the evidence about whether defendant was high on methamphetamine during the incident, the prosecutor is free to argue reasonable inferences arising from the evidence. *Mullins*, 322 Mich App at 172. Prosecutors "need not confine argument to the blandest of all possible terms . . . ." *People v Cox*, 268 Mich App 440, 451; 709 NW2d 152 (2005) (cleaned up). We find that the prosecutor did not commit plain error. See *Carines*, 460 Mich at 763.

## III. USE OF ACQUITTED CONDUCT

Defendant next contends he is entitled to be resentenced because offense variables (OVs) 1, 2, 7, and 12 were improperly scored based on acquitted conduct. We disagree.

Under the sentencing guidelines, a trial court's factual findings "are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016) (cleaned up). "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to . . . testimony taken at . . . trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (cleaned up). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. (cleaned up).

Criminal defendants are entitled to a sentence that is based on accurate information and accurate scoring of the sentencing guidelines. *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009). Sentencing courts must determine the applicable minimum sentence range under the sentencing guidelines and take such calculations into account when imposing a sentence; however, the guidelines are advisory only and not mandatory. *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). A defendant is entitled to resentencing if there is a scoring error that alters the defendant's recommended minimum sentence range under the guidelines. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006).

In *People v Beck*, 504 Mich 605, 625-626; 939 NW2d 213 (2019), our Supreme Court held that "the use of acquitted conduct to sentence a defendant more harshly violates due process . . . ." The Court explained how the use of acquitted conduct is distinguishable from the use of uncharged conduct:

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not

proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself. [*Beck*, 504 Mich at 626-627 (cleaned up).]

We provided guidance on the application of *Beck* in *People v Brown*, 339 Mich App 411; 984 NW2d 486 (2021). Because courts have struggled with the implementation of the *Beck* majority's description of "acquitted conduct" as conduct that "has been formally charged and specifically adjudicated not guilty by a jury," this Court adopted a "rational-jury approach" that would focus "on what the parties actually disputed at trial." *Id*. at 421, 423.

This approach moves away from prohibiting any and all facts and circumstances related to any element of the crime, and instead focuses on the key facts and circumstances that the parties argued about during the trial. This approach is similar to the "rational jury" standard used in the double-jeopardy context, which requires examining the record to determine the ground or grounds upon which a rational jury could have acquitted the defendant. Rather than focus on all of the conceivable grounds upon which a jury could have theoretically acquitted the defendant—even those grounds, for example, that were conceded by the defense or otherwise uncontested by the parties—the focus would be on the grounds that the parties actually put in dispute at trial. The inquiry must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.

* * *

. . . [U]nder the rational-jury approach, the sentencing court could consider facts and circumstances that were not, in a practical sense, put in dispute at trial, as long as those facts and circumstances were otherwise consistent with the jury's acquittal on a particular charge. Moreover, if a specific fact or circumstance was relevant to both the acquitted charge and the convicted charge—i.e., if there was an overlap of relevant conduct—then the trial court could consider that fact or circumstance when sentencing on the convicted charge. [*Id*. at 423-425 (cleaned up).]

Defendant first argues OV 1 was improperly assessed 15 points. OV 1 "is aggravated use of a weapon." MCL 777.31(1). An assessment of 15 points is warranted when "[a] firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c). "Further, OV 1 is an offense-specific variable; therefore, in scoring OV 1, a trial court is limited to considering the sentencing offense alone." *People v Biddles*, 316 Mich App 148, 166; 896 NW2d 461 (2016) (cleaned up). Our Supreme Court defined the "sentencing offense in the context of OVs as the crime of which the defendant has been convicted and for which he or she is being sentenced." *People v Carter*, 503 Mich 221, 227; 931 NW2d 566 (2019) (cleaned up).

Defendant was convicted of one count of felonious assault under MCL 750.82 ("a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or

-6-

other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony[.]") "The elements of felonious assault are (1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007) (cleaned up). By convicting defendant of felonious assault, the jury found beyond a reasonable doubt that defendant carried or possessed a dangerous weapon during the incident even though it acquitted him of felon-in-possession, felony-firearm, and CCW. We find that OV 1 was properly assessed based on the sentencing offense.

Defendant next argues OV 2 was improperly assessed five points. "Offense variable 2 is lethal potential of the weapon possessed or used." MCL 777.32(1). An assessment of five points is warranted when "[t]he offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon." MCL 777.32(1)(d). Defendant was convicted of felonious assault under MCL 750.82, which requires the use of "a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon . . . ." The jury found beyond a reasonable doubt that defendant carried or possessed a dangerous weapon during the incident even though it acquitted him of felon-in-possession, felony-firearm, and CCW. We find that OV 2 was properly assessed based on the sentencing offense.

Defendant also argues OV 7 was improperly assessed 50 points. "Offense variable 7 is aggravated physical abuse." MCL 777.37(1). An assessment of 50 points is warranted when "[a] victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). Our Supreme Court held: "[I]t is proper to assess points under OV 7 for conduct that was intended to make a victim's fear or anxiety greater by a considerable amount." *People v Hardy*, 494 Mich 430, 441; 835 NW2d 340 (2013), superseded in part by statute as stated in *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019). Because MCL 777.37(1)(a) specifically references conduct "during the offense," a sentencing court must focus on conduct that occurred during the sentencing offense. *People v Thompson*, 314 Mich App 703, 711; 887 NW2d 650 (2016).

In *Hardy*, the defendant pointed a shotgun at the victim and racked it during a carjacking. The defendant claimed that he racked the gun to get the victim to comply, not to increase the victim's fear. *Hardy*, 494 Mich at 445. The Court was not persuaded by the defendant's argument, finding that the sentencing court properly assessed 50 points for OV 7 "[b]ecause [the defendant] took the extra step of racking the shotgun, and because he did so to make his victim fear that a violent death was imminent, not just possible . . . ." *Id*. Similarly, in this case, the trial court considered the evidence that defendant pointed the gun at Maupin and then racked a round into the chamber. Because felonious assault does not require an element that the gun be racked, the trial court concluded that defendant "engaged in actions that went beyond the minimal required by the elements" and, consistent with *Hardy*, assessed 50 points for OV 7. We find that OV 7 was properly assessed based on the sentencing offense.

Finally, defendant argues OV 12 was improperly assessed five points because the trial court acknowledged defendant's acquitted conduct as the basis for scoring OV 12, which violated *Beck*. It is not necessary for us to reach this issue because, even assuming arguendo that OV 12 was improperly scored, reducing OV 12 to zero would have no effect on defendant's sentencing

guidelines range. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *Francisco*, 474 Mich at 89 n 8.

Affirmed.

/s/ Stephen L. Borrello
/s/ Brock A. Swartzle
/s/ Sima G. Patel